## JOHN P. METZEN
### v.
## JAMES H. WYATT.

*Sales—Real Property—Commissions—Recovery of by Agent.*

1. Although the owner of land has placed it in the hands of an agent for sale, such act does not deprive him of the right to sell it himself.

2. If a sale by an owner works a breach of a contract with an agent, an action by the latter should be based on such breach, and not on a performance of the contract.

3. In order to recover commissions, an agent must prove that his party was ready, able and willing to complete the purchase upon the terms required.

[Opinion filed October 27, 1891.]

APPEAL from the City Court of East St. Louis, Illinois; the Hon. B. H. CANBY, Judge, presiding.

Mr. JESSE M. FREELS, for appellant.

Messrs. M. MILLARD and ALEX. FLANNIGAN, for appellee.

SAMPLE, J.    This suit was brought by the appellee, Wyatt, to recover from the appellant, Metzen, $2,500, as commission for the sale of real estate in East St. Louis.

Wyatt claims the contract was, that if he sold the property for $40,000 he was to receive $500, and if he sold it for more than $40,000, then he was to receive one-half of such surplus for his commissions; that in pursuance of such contract, on the 12th, 13th or 14th of December, 1889, through his sub-agents, Locke and Ewing, he sold the property for $45,000 cash, to Greenwood and Carr, and immediately notified Metzen of the sale, and requested him to bring his plat to the office, where they would meet Greenwood; that Metzen came and brought his plat but Greenwood telephoned that he could not be there that day, and the next day Metzen sold the property for $37,500 to Donevan and others. Metzen denies that he made any such contract with Wyatt, but claims the contract was, that he would give Wyatt $500 if he could sell the property for $900 per acre, as Wyatt had declared he could. There were forty-nine and 115-1000 acres in the tract of land owned by Metzen. Metzen also denies that he was informed of the sale, but on the contrary declares that Wyatt told him, a day or two before he sold for $37,500, that he, Wyatt, had no purchaser. He further denies that he went to Wyatt's office to meet Greenwood.

We are met at the threshold of this case with the claim that appellant sold his land for $7,500 less than he knew he could get for it from appellee's client. A keen analyzer of human motive has said :

> "Two principles in human nature reign;
> Self love to urge and reason to restrain."

No reason is assigned nor can any be perceived why appel-

lant should refuse to take $45,000 for his property and then immediately sell it for $37,500. There was no change in the condition of things, nor is there any evidence to show that appellant was led to believe that appellee's client was making a bogus offer. Appellant swears that he was not informed of such an offer. Outside of that view, if appellant was informed of the sale, it is passing strange that he should hasten to sell the property at a sacrifice of $7,500. It is thought that the appellant is corroborated in his statement that no such offer was made to him. Under the contract, as set up by appellee, he was to receive $2,500 as commissions for making such a sale, that is, he was to receive one-half of all he sold the property for, over $40,000; yet he admits that after appellant made the sale, he sent in a bill for $500 commissions; not as a matter of compromise, for he had not seen appellant after the sale and before sending in his bill. Why should he voluntarily reduce his claim $2,000?

Then, again, appellant testified that in Lieb's saloon he asked appellee if he had any purchaser for the property, and that appellee replied that he had not; that he then told him if he got an offer to come there the next day; that he did not come the next day, nor the second or third day thereafter, and that appellant did not see him any more until the day of the trial of this case. The barkeeper, Lantle, testified that he heard Metzen and Wyatt talking about land, and that Metzen told Wyatt to come around the next day at twelve o'clock; that Metzen came to the saloon and waited for Wyatt the next day and for two days thereafter, but Wyatt did not come. The sale was made by appellant on Friday of the week, and appellee admits that he met appellant in Lieb's saloon on the Tuesday or Wednesday before and talked about the sale of this property, and further admits that he did not inform appellant of the offer he had of $45,000, or of any offer for the property. The record of the examination of appellee on a former trial shows that he then thought he met appellant in the saloon on Friday and did not inform him of the offer. Appellee's testimony on this trial below was, that he informed appellant of the offer on Wednesday of the week of the sale.

This suit is brought on the theory that a sale was made of

the property by appellee, and that appellant was informed thereof before the sale by him to Donevan and others. It is based on commissions earned. As stated by appellee's counsel, "The controlling fact in this case is, that Metzen sold the land to Donevan and others *after* Wyatt notified him that Greenwood and Carr would buy it." We find that Metzen was not notified of the offer of Greenwood and Carr before he sold to Donevan and others. Therefore there can be no recovery in this case, for it is clear law, that notwithstanding Wyatt had authority to sell the land as Metzen's agent, yet such agency in Wyatt did not deprive Metzen of the right to sell his own land. If such sale worked a breach of the contract, then the action should be based on such breach and not on a performance of it. If, as we have found, Metzen was not notified of the alleged sale to Greenwood and Carr until after he had sold to Donevan and others, then there ceased to be any property in Metzen upon which the agency of Wyatt could operate, even to the extent of a subsequent notification, which, it is conceded, was a necessary incident to complete the right of action in this case for commissions earned.

We might rest our opinion here, but it is deemed proper to say that we are not satisfied from the evidence that such a sale was made to Greenwood and Carr as would authorize a recovery. It appears from the evidence that Mr. Locke had contracted with Mr. Greenwood before for the sale of property, but he testified that "all the sales I made to him were for other parties." Mr. Carr was asked this question: "Q. What property you bought, though, was for other parties? A. Oh, yes, we bought nothing for ourselves." It is apparent from the whole evidence that Greenwood and Carr were not the real purchasers of the property, conceding all that is claimed by appellee, but that they were acting as the agents of other parties, whose names are not disclosed by this record. Whether such undisclosed parties were ready, able and willing to complete the purchase is not shown by any evidence in this record, which it is conceded must be proved, in order to recover commissions in a case like this. For the reasons stated the judgment will be reversed and the cause remanded.

*Reversed and remanded.*