ELIZA W. HARRIS and John P. Jackson, Partners, Doing Business as Harvey Harris & Company, v. PETER J. VAN VRANKEN.

(155 N. W. 65.)

**Real estate broker — lands listed for sale — purchaser found — sale agreement made — refusal of landowner to sell — damages — action for — will lie.**

1. Action by real estate brokers against the seller for refusing to convey land to a purchaser to whom plaintiffs had negotiated a sale after defendant had listed the land with them for sale. *Held:*

An action for damages will lie under such circumstances.

**Damages — measure of — commissions — resulting from sale.**

2. That the measure of damage is the amount plaintiffs would have received as commissions from the intending purchaser had defendant complied with his contract and conveyed to such purchaser who was ready, able, and willing to pay both purchase price and commissions.

**Chain of title — abstract — names — discrepancies in — contract — breach of.**

3. Defendant had agreed with the purchaser to furnish an abstract of title showing perfect record title. The record disclosed that a deed in defendant's chain of title was taken to one "Krups," grantee, and that the next grant was executed by one "Krepps." The purchaser took exception to this title of record. Defendant failed and neglected to produce on demand original deeds, or to cure the defects, except a statement by affidavit that the grantee and the grantor so named were the same person. Defendant refused to convey unless the purchaser would accept such record title. *Held:*

That the title was not marketable, and that defendant, and not the intending purchaser, breached the contract.

**Double contract — sale and purchase — commissions — damages.**

4. That the contract negotiated amounted to a double one under which defendant agreed to convey to plaintiffs' purchaser, with the purchaser agreeing to purchase of defendant and to defendant's knowledge to pay commissions to

Note.—There is an almost unbroken current of authority to the effect that, in the absence of a stipulation to the contrary in the contract between a real estate broker and his principal, the former is entitled to his commissions if, acting in good faith, he procures a purchaser willing, able, and ready to take the property upon the terms offered by the principal and the sale fails because of a defect in the principal's title. The authorities on this question are exhaustively reviewed in notes in 43 L.R.A. 609; 3 L.R.A.(N.S.) 576; and 24 L.R.A.(N.S.) 1182.

plaintiffs. Defendant's purchase price was fixed with a commission payable from the purchaser to plaintiffs. Louva v. Worden, 30 N. D. 401, a recent decision of this court to recover commissions from the seller for a purchase negotiated, distinguished.

**Demurrer — complaint — evidence — rulings of court.**

5. Demurrers to the complaint and to the evidence offered were properly overruled.

Opinion filed June 19, 1915. Opinion on rehearing filed November 30, 1915.

From a judgment of the District Court of Burleigh County, *Nuessle*, J., defendant appeals.

Affirmed.

*Hanley & Sullivan,* and *Miller & Zuger,* for appellant.

"Verbal" offers to agent are not sufficient; they must be made to principal. Johnson Bros. v. Wright, 124 Iowa, 61, 99 N. W. 103.

Where compensation is not fixed by contract, recovery must be on basis of *quantum meruit.* Boysen v. Robertson, 70 Ark. 56, 68 S. W. 243; Ford v. Brown, 120 Cal. 551, 52 Pac. 817; Kennedy v. Merickel, 8 Cal. App. 378, 97 Pac. 82; Turnley v. Michael, 4 Tex. App. Civ. Cas. (Willson) 363, 15 S. W. 912; Chezum v. Kreigbaum, 4 Wash. 680, 30 Pac. 1098, 32 Pac. 109; Matheney v. Godin, 130 Ga. 713, 61 S. E. 703; Allen v. Clopton Realty Co. — Tex. Civ. App. —, 135 S. W. 242.

A real estate broker to sell land for a net price is not entitled, in the absence of a contract therefor, to the excess over such price, as he may obtain for the land. Wilson v. Mason, 158 Ill. 304, 42 N. E. 134; Hammond v. Crawford, 14 C. C. A. 109, 35 U. S. App. 1, 66 Fed. 425; Keys v. Johnson, 68 Pa. 42; Olsen v. Jodon, 38 Minn. 468, 38 N. W. 485; Richards v. Jackson, 31 Md. 250, 1 Am. Rep. 49; Dorrington v. Powell, 52 Neb. 440, 72 N. W. 587; Felts v. Butcher, 93 Iowa, 414, 61 N. W. 991; Ormsby v. Graham, 123 Iowa, 202, 98 N. W. 724; Brandrup v. Britten, 11 N. D. 376, 92 N. W. 453.

Where a parol offer is relied on by plaintiffs, they must allege such parol offer to have been made by the purchaser to the defendant. Such offer to the broker is not sufficient. Johnson Bros. v. Wright, 124 Iowa, 61, 99 N. W. 103, and cases cited; Ford v. Brown, 120 Cal. 551, 52 Pac. 817; Manton v. Cabot, 4 Hun, 73; Owen v. Ramsey, 23 Ind. App. 285, 55 N. E. 247.

Where an express contract of employment is relied upon, it must be proved as alleged. Castner v. Richardson, 18 Colo. 496, 33 Pac. 163; Kane v. Sherman, 21 N. D. 249, 130 N. W. 222; Patterson v. Torrey, 18 Cal. App. 346, 123 Pac. 224.

There was no agreement for compensation, and recovery can only be had upon *quantum meruit.* Turnley v. Michael, 4 Tex. App. Civ. Cas. (Willson) 363, 15 S. W. 912; Scott v. Hartley, 126 Ind. 239, 25 N. E. 826; Chezum v. Kreigbaum, 4 Wash. 680, 30 Pac. 1098, 32 Pac. 109; Boysen v. Robertson, 70 Ark. 56, 68 S. W. 243; Matheney v. Godin, 130 Ga. 713, 61 S. E. 703; Allen v. Clopton Realty Co. — Tex. Civ. App. —, 135 S. W. 242; Ford v. Brown, 120 Cal. 551, 52 Pac. 817; Manton v. Cabot, 4 Hun, 73; Owen v. Ramsey, 23 Ind. App. 285, 55 N. E. 247.

A broker to procure purchasers for land, to be entitled to any compensation, must prove that he found and produced to defendant a person ready, willing, and able to buy and pay, and who offered to buy at the price and on the terms alleged. Johnson Bros. v. Wright, 124 Iowa, 61, 99 N. W. 103; Flynn v. Jordal, 124 Iowa, 457, 100 N. W. 326, and cases cited; Gunn v. Bank of California, 99 Cal. 349, 33 Pac. 1105; Mattingly v. Pennie, 105 Cal. 514, 45 Am. St. Rep. 87, 39 Pac. 200; McGavock v. Woodlief, 20 How. 221, 15 L. ed. 884; O'Brien v. Gilliland, 4 Tex. Civ. App. 42, 23 S. W. 244; Cullen v. Bell, 43 Minn. 226, 45 N. W. 428; Dent v. Powell, 93 Iowa, 711, 61 N. W. 1043; Neiderlander v. Starr, 50 Kan. 766, 32 Pac. 359; Carter v. Owens, 58 Fla. 204, 25 L.R.A.(N.S.) 736, 50 So. 641; Watters v. Dancey, 23 S. D. 481, 139 Am. St. Rep. 1071, 122 N. W. 430; Cone v. Keil, 18 Cal. App. 675, 124 Pac. 548; Grindstaff v. Merchants' Invest. & T. Co. 61 Or. 310, 122 Pac. 46.

The conditions of the contract were not fulfilled in any respect. Halsell v. Renfrow, 14 Okla. 674, 78 Pac. 118, 2 Ann. Cas. 286.

A broker may not speculate with his principal's property, without the knowledge and consent of the principal, but must account for all profits. Borst v. Lynch, 133 Iowa, 567, 110 N. W. 1031; Young v. Hughes, 32 N. J. Eq. 372; Pratt v. Patterson, 112 Pa. 475, 3 Atl. 858; Martin v. Bliss, 57 Hun, 157, 10 N. Y. Supp. 886; Carter v. Owens, 58 Fla. 204, 25 L.R.A.(N.S.) 736, 50 So. 641.

"Man cannot serve two masters." O'Meara v. Lawrence, 159 Iowa,

448, 141 N. W. 312; Henderson v. Vincent, 84 Ala. 99; Ford v. Brown, 120 Cal. 551, 52 Pac. 817; Morey v. Laird, 108 Iowa, 670, 77 N. W. 835; Carpenter v. Fisher, 175 Mass. 9, 55 N. E. 479; Phinney v. Hall, 101 Mich. 451, 59 N. W. 814; Ballinger v. Wilson, — N. J. Eq. —, 53 Atl. 488; Martin v. Bliss, 57 Hun, 157, 10 N. Y. Supp. 886.

Courts cannot supply omissions in contract. Johnson v. Plotner, 15 S. D. 158, 86 N. W. 926; Schmeling v. Kriesel, 45 Wis. 325; Potts v. Whitehead, 20 N. J. Eq. 55; Colson v. Thompson, 2 Wheat. 336, 4 L. ed. 253.

In order to obtain specific performance of a contract, its terms should be so precise as that neither party can reasonably misunderstand them. Bailey v. Ogden, 3 Johns. 399, 3 Am. Dec. 509; Meyer Land Co. v. Pecor, 18 S. D. 466, 101 N. W. 39; Chambers v. Roseland, 21 S. D. 298, 112 N. W. 148.

Perfect title means a title free from reasonable doubt. Woodward v. McCollum, 16 N. D. 43, 111 N. W. 623.

*Newton, Dullam, & Young,* for respondents.

The findings of the trial court have the same weight as the verdict of a jury and are presumed to be correct, and unless they are against the clear preponderance of the evidence, they must stand. Ruettell v. Greenwich Ins. Co. 16 N. D. 546, 113 N. W. 1029; James River Nat. Bank v. Weber, 19 N. D. 702, 124 N. W. 952.

A plaintiff must allege and prove all facts necessary to entitle him to recover, upon the theory outlined by his pleading. 19 Cyc. 274; Hayes v. McAra, 166 Mich. 198, 35 L.R.A.(N.S.) 117, 131 N. W. 535; Hamlin v. Schulte, 34 Minn. 534, 27 N. W. 301; Grosse v. Cooley, 43 Minn. 188, 45 N. W. 15; McDonald v. Smith, 99 Minn. 42, 108 N. W. 291; Fulton v. Cretian, 17 N. D. 335, 117 N. W. 344.

Courts, in construing contracts, should regard that construction placed upon it by the parties themselves. Moore v. Beiseker, 77 C. C. A. 545, 147 Fed. 367; Willard v. Monarch Elevator Co. 10 N. D. 400, 87 N. W. 996; Canfield v. Orange, 13 N. D. 622, 102 N. W. 313.

Where a broker for the sale of lands finds a buyer who is willing and ready to buy and pay on the terms required by the owner of the land, or principal, and communicates the facts to another agent of the same principal, he commits no fraud by not disclosing the amount of excess he is to receive, over the net price. Deming Invest. Co. v. Meyer,

19 Okla. 100, 91 Pac. 846; Townsend v. Kennedy, 6 S. D. 47, 60 N. W. 164; Reed, Stat. Fr. § 341; Allgood v. Fahrney, 164 Iowa, 540, 146 N. W. 42.

. It is not a question of the ability of the prospective purchaser to procure the money to pay for the land, but the test is, his ability and circumstances to respond in damages for a breach of his contract to purchase. Butler v. Baker, 17 R. I. 582, 33 Am. St. Rep. 897, 23 Atl. 1019; McCabe v. Jones, 141 Wis. 540, 124 N. W. 486; Stoutenburgh v. Evans, 142 Iowa, 239, 120 N. W. 59, 19 Ann. Cas. 1048; Hart v. Hoffman, 44 How. Pr. 168; Hackley v. Draper, 60 N. Y. 88; White v. Glasby, 101 Mo. 162, 14 S. W. 180; Grosse v. Cooley, 43 Minn. 188, 45 N. W. 15; McDonald v. Smith, 99 Minn. 42, 108 N. W. 291; Hamlin v. Schulte, 34 Minn. 534, 27 N. W. 301.

Concealment of the identity of the purchaser from his principal will not preclude the owner from recovering his commissions on a sale of land, where there does not appear that there was anything in the facts and circumstances to render that fact important. Veasey v. Carson, 177 Mass. 117, 53 L.R.A. 241, 58 N. E. 177; Feist v. Jerolamon, 81 N. J. L. 437, 75 Atl. 751.

The seller's title to the land is not free from reasonable doubt. The title is not marketable. The defendant himself recognized that his title was not right. The vendor gave for his reason for withdrawing the land from sale, that he no longer needed the money to be paid down. Hubner v. Reickhoff, 103 Iowa, 368, 64 Am. St. Rep. 191, 72 N. W. 540; 4 Words & Phrases, p. 3380.

He cannot, after litigation is started, assign and rely upon another and different reason. Donley v. Porter, 119 Iowa, 542, 93 N. W. 574; Weaver v. Snow, 60 Ill. App. 624; Smith v. Keeler, 151 Ill. 518, 38 N. E. 250; Blood v. Shannon, 29 Cal. 393.

Goss, J. · This action is by real estate brokers to recover damages for defendant's breach of contract in refusing to convey to a third person a section of land belonging to defendant, and for which plaintiffs had, at his solicitation, secured said third person as a purchaser, and who had agreed with defendant to buy. The plaintiffs' damages arise from defendant preventing their securing commissions from the purchaser by breaching the contract. A general demurrer was interposed

to the complaint, and the order overruling it is the first error assigned. The material parts of the complaint will be set forth at length.

It is alleged that plaintiffs are real estate brokers engaged in buying and selling real property on commission for others "to the knowledge of the defendant." That defendant was the owner of said section of land. "That on and prior to the said 21st day of September, 1906, the defendant had employed the plaintiffs to sell such real property, and had directed and authorized them to offer for sale and to sell the same for, and at the price of, $15 per acre net to him, and that on or about said date they offered the same to one Julius C. Kunze, then of the town of Lewis, and state of Iowa, at and for the price of $17 per acre; and that the said Julius C. Kunze then and there offered to buy the same at said price, upon the terms and conditions of a payment of $1,780, down, of which $1,280 was the plaintiffs' profit and commissions and as to the net price to the defendant and terms of payment thereof, as follows, viz.: $500 cash on delivery by the defendant of a contract for a warranty deed conveying the land free from all encumbrances whatsoever when the terms of the contract are complied with by such purchaser,— such purchaser to pay an additional $1,300 on or before the 1st day of March, 1907, and the balance of the purchase price to be paid in six equal annual payments, with interest at the rate of 6 per cent per annum, payable annually,—the defendant to furnish an abstract showing perfect title continued to date; when purchaser has paid one fourth of the purchase price, defendant to give him a warranty deed and take back a mortgage for the unpaid balance due on the purchase price,— the purchaser to have the privilege of paying at or before maturity. That said Julius Kunze was then and there able, ready, and willing and ever since said time has been able, willing, and ready to carry out and perform said offer; and that thereupon on the said day the plaintiffs submitted said offer to the defendant, in writing, and that thereupon, to wit, the 24th day of September, 1906, the defendant accepted such offer in writing and thereby entered in a contract for the sale of such property for and at the price of $15 per acre net to him." That defendant refused to "carry out said agreement for the sale and conveyance of such real property," and still refuses to do so, of which he has notified plaintiffs, who demanded that he comply with his contract. Then follows the allegation of damage, "that by reason of the premises

·and the defendant's refusal to carry out his said agreement hereinbefore shown, the plaintiffs have lost the commission and profit that otherwise they would have received upon the sale and conveyance of said real property, to wit, the sum of $2 per acre upon said 640 acres contained in said section 21 being the aggregate amount of twelve hundred and eighty dollars ·($1,280)." Prayer is for damages in the sum of $1,280 and interest. The complaint may properly be subdivided and epitomized as follows: (1) Defendant listed the land with plaintiffs for sale at $15 per acre net to him. (2) They offered to sell it to Kunze for $17 per acre cash. (3) Instead of accepting that offer, Kunze made a counter-proposition to plaintiffs that he would buy it at $17 per acre with a cash payment down of $1,780, "of which $1,280 was the plaintiffs' profit and commissions," and coupled with it the following offer: "As to the net price ($15 per acre) to the defendant," with "terms of payment thereof to defendant of said purchase price," viz., "$500 cash on delivery by defendant of a contract for warranty deed conveying the land free of all encumbrances whatsoever," with time on terms stated as to the balance of the $15 per acre coming to defendant, over the $500 cash. (3) That plaintiffs immediately submitted in writing said offer (of Kunze) to defendant; and (4) that on September 24, 1906, the defendant accepted in writing such offer of Kunze's so communicated to defendant through plaintiffs; and (5) defendant executed said contract and "thereby entered into a contract for the sale of such property "for and at the price of $15 per acre net to him" (defendant); (6) that he subsequently refused to convey, and plaintiffs lost a profit of $2 per acre, or $1,280, which they would have received from Kunze and which sum they demand as damages resulting to them from defendant breaching said contract.

These brokers were not the agents, strictly speaking, of defendant to sell, but only to procure a purchaser. Hayes v. McAra, 35 L.R.A. (N.S.) 116, and note (166 Mich. 198, 131 N. W. 535); Fulton v. Cretian, 17 N. D. 335, 117 N. W. 344, distinguishing this action in principle from those similar to Ballou v. Bergvendsen, 9 N. D. 285, 83 N. W. 10. See also Brandrup v. B..itten, 11 N. D. 376, 92 N. W. 453, and Larson v. O'Hara, 8 Ann. Cas. 849, and note (98 Minn. 71, 116 Am. St. Rep. 342, 107 N. W. 821). But if considered defendant's brokers, they may have an interest antagonistic to him, arising out of

the transaction negotiated when he had as here shared full knowledge that they were acting for both, and no fraud is involved, 4 R. C. L. 262–277, and authority there cited. The complaint pleads that defendant knew plaintiffs were real estate brokers, and listed with them his land for sale at a net price to him. And he authorized them to offer it for sale with no other restrictions upon the selling price, except the implied one that good faith would be exercised toward him, and the property would be sold as advantageously as possible for defendant. They offered it at $17 per acre to Kunze, presumably for cash. Had Kunze accepted and paid cash without further negotiations or understanding between plaintiffs and defendant as to commissions for negotiating the sale, the recent decision of Louva v. Worden, 30 N. D. 401, 52 N. W. 689, would apply (quoting from the syllabus) "where the owner lists real property for sale with a broker at a net price, such broker, in the absence of an express contract to that effect, is not entitled to receive as a commission all the selling price in excess of such list price, but is merely entitled to a reasonable commission not exceeding such excess." Had nothing further been said about commissions, and had Kunze bought for cash when the land was offered him, there would have been no express contract that the margin of $2 per acre should be commission and profit to plaintiffs. All that plaintiffs could then have recovered would have been the reasonable value of services rendered and upon a *quantum meruit*. But right here enter facts entirely distinguishing this case fram Louva v. Worden, supra. Kunze did not accept the offer of the defendant by his brokers to him, but instead came back with a different offer, to wit, to pay $15 per acre net to defendant and $1,280 to plaintiffs as their commission for negotiating for Kunze a purchase at $15 net to defendant and upon Kunze's terms as specified. Thus at this point in the negotiations these brokers were communicating not defendant's offer or their own for defendant, to Kunze; but instead, Kunze's offer to defendant made through them, of $15 net to defendant with a $2 per acre margin to them as brokers, constituting plaintiffs on its acceptance by defendant brokers for both parties with commissions agreed upon in amount and from whom payable. This was a legitimate offer to make and for the brokers to act upon. Defendant knew their position, and that they were not exclusively his agents, but merely go-betweens with compensation agreed up-

on. Said offer or arrangement defendant accepted immediately, and partially executed it. Under it defendant was receiving as the purchase price full $15 per acre net upon terms sanctioned and agreed upon by him. From the complaint defendant, with knowledge that the $2 per acre in cash would be taken by plaintiffs as commissions, and that he should have the $15 per acre net to him, accepted the same in writing. This agreement he subsequently violated by refusing to perform it. To such a case Louva v. Worden, supra, has no application. Defendant, knowing the terms of the contract, knew the injury that would result to plaintiffs from its breach, and wilfully breached it, thereby subjecting himself to resulting damages, the measure of which was the profit coming not from defendant, but from Kunze, and which amount Kunze was ready, willing, and able to pay, when defendant performed. The law of this case must not be confused with the measure of recovery with the suit brought against the seller, who, under the contract, agrees to pay a compensation for selling. Here the sale was not made for the seller alone, nor was the purchaser procured solely for the seller. This would have been a different case had Kunze's offer been that he would pay defendant $17 per acre but with the condition that defendant should pay commissions. The burden would then be upon plaintiffs to establish a contract, either express or implied, that defendant, not Kunze, should pay the $2 per acre to them margin as their profits, and be parallel in facts with Louva v. Worden. But the complaint is evidently drawn to avoid just that situation, in that it pleads that the offer is made to the brokers with their commission specified, and with the seller's net price to him specified, together with terms in detail; that such offer, impliedly the entire offer concerning both brokerage commission and the net stipulated purchase price to defendant, was accepted by defendant. That such contract does not need to be in writing to empower the broker to negotiate a sale has the support of the weight of authority. Mechem on Agency, 2d ed. 1914, § 2434, reading: "These agreements with the broker to pay a commission for finding a purchaser for real estate are not within the statute of frauds, and hence are valid though not in writing." Many cases are cited supporting the text, among them 9 L.R.A.(N.S.) 933, the note to which also cites much authority. See also notes in 35 L.R.A.(N.S.) 116, Dotson v. Milliken, 209 U. S. 237, 52 L. ed. 768, 28 Sup. Ct. Rep. 489,

and 4 R. C. L. 300. The contract is pleaded, however, as a written one with a written acceptance.

It is true that, as stated in 19 Cyc. 301, "as a rule a contract negotiated by a broker in behalf of a principal cannot found a right of action in favor of the broker against the other contracting party." However, there is an exception supporting a recovery under circumstances similar to those in suit. See Livermore v. Crane, 26 Wash. 529, 67 Pac. 221, 57 L.R.A. 401, the syllabus reading: "Refusal to comply with a contract to purchase real estate by reason of which the broker who negotiated the sale is deprived of his commissions, will render the intending purchaser liable for the damages thereby inflicted on the broker, *although he had agreed to look to the seller for his commissions.*" This case cites Cavender v. Waddingham, 2 Mo. App. 551, and Atkinson v. Pack, 114 N. C. 597, 19 S. E. 628. This last case is identical in facts with the one at bar. The following is from the opinion in Livermore v. Crane, *viz.:* "The second case mentioned is Atkinson v. Pack, *supra,* where it was in effect determined that a real estate broker negotiating a sale of land for a person who agreed with him in writing to convey it to the intending purchaser from whom he was to receive his commission may maintain an action for breach of contract upon refusal of such person to convey, upon showing that the purchaser was ready to take and pay therefor. It was said in this case: 'There were plainly two contracts made by plaintiffs,—the one with defendant, the effect of which was that plaintiffs would provide a purchaser of the land at the agreed price, commissions to be paid by the purchaser; the other with the purchaser, that he would pay the plaintiffs' commissions upon the conclusion of the sale. If, through the negotiation of plaintiffs, the parties had been brought together and had concluded the trade between them, the plaintiffs would have been entitled to their commissions from . . . the purchaser according to the terms of their contract. But this action is for damages. The gravamen of the charge is that defendant committed the wrong and injury upon plaintiffs by a refusal without cause to comply with his contract with plaintiffs to sell the land to plaintiffs' principal, with the distinct understanding that plaintiffs were to be compensated by the purchaser. The natural effect and consequence of this refusal by defendant was the loss by plaintiffs of their commissions.' *It would seem to be immaterial whether in the original negotiation or*

*the sale, the plaintiff was the agent of the vendor or the purchaser.* The complaint here is for the violation of the contract to purchase, from which violation damages directly result to plaintiff." To same effect, see Eells v. Parsons, 11 Ann. Cas. 475, and note (132 Iowa, 543, 109 N. W. 1098); Weaver v. Richards, 144 Mich. 412, 6 L.R.A.(N.S.) 855–860, 108 N. W. 382; Metzen v. Wyatt, 41 Ill. App. 487; Bishop v. Averill, 17 Wash. 209, 49 Pac. 237, 50 Pac. 1024. The pleader may have drawn the complaint under this precedent. It is not subject to demurrer.

Defendant answered, alleging "the fact to be that on or about the month of September, 1906, plaintiffs wrote defendant, stating that they could get $15 per acre net to this defendant for said land" on terms identical with those pleaded in the complaint as Kunze's offer, except reference to the $1,280 therein mentioned as plaintiffs' profit and commissions or any reference to $17 per acre as the purchase price. The answer continues: "That thereafter in September, 1906, defendant informed plaintiffs that he would be willing to accept such offer; that thereafter neither this plaintiff nor anyone else attempted or offered to carry out the terms of said offer; but on the contrary plaintiffs continually made and suggested modifications of said offer to this defendant, which were not accepted by him. Further answering, defendant alleges that neither the plaintiffs nor anyone else ever complied with the conditions of said offer, although often requested to do so by this defendant." All other matters in the complaint were denied.

. Thus the fact that an offer was made by Kunze through plaintiffs to defendant stands admitted, but the answer denies its acceptance by defendant as made. The issues tendered for proof under the pleadings resolved simply to the terms of the offer as to commissions, and whether defendant violated the agreement to transfer. Findings were filed supporting all matters contained in the complaint and judgment entered thereon for $1,895.25 damages.

Previous to May 15, 1906, defendant had quoted plaintiffs a selling price on said land. On that date he writes them: "I would not want to divide section 21. Please change the price to 15 per acre net to me, one-fourth cash balance easy at 6 per cent." Plaintiffs showed Kunze this land on September 7th and offered it to him at $17 per acre. Next day they wrote defendant: "We showed the land to an Iowa man

yesterday, but he has not enough money for the cash payment you ask.
. . . We can get you $15 per acre net to you on the following terms:
The purchaser to pay you $500 cash, on the delivery from you of a
properly executed contract for a warranty deed, conveying the land free
from all encumbrances whatsoever when the terms of the contract are
complied with by him. He to pay you an additional $1,300 on or
before the 15th of March, 1907, and the balance to be paid in six equal
payments, with interest at 6 per cent per annum, interest to be paid
annually. *You to furnish an abstract showing perfect title.* . . .
Wire us if you accept the offer."

This letter was not replied to, presumably because defendant was a
traveling man and away from home. So, on September 21, 1906, plain-
tiffs wrote him a duplicate of their first letter, against asking him to
"wire us if you accept the offer."

Defendant replied by telegram on September 24th: "I accept your
proposition of fifteen net to me," and followed it with a letter reading:
"I inclose you abstract to section 21. If you will kindly turn over to
Mr. Byrne and have him bring this down to date, I will mail him a
check. If your man is ready can see no reason why you can't close this
deal this week." This was in reply to the following under date of Sep-
tember 29th from plaintiffs to defendant: "The First National Bank
of this city notified us to-day that there was deposited with them $250
earnest money to be applied on the purchase price of section 21. Please
send the abstract to Mr. Byrne, of this city, the official abstracter, to be
continued to date and then delivered to us for examination. We will
forward it to the purchaser for his examination. The purchaser is
ready to pay his first payment as soon as his attorney pronounces the
title all right. Please attend to the sending of the abstract on receipt
of this letter, as we wish to close this sale as rapidly as possible." Upon
receipt of defendant's reply above set forth, they wrote him October 3d:
"Your letter inclosing the abstract was this day received. We took it to
the abstracter to have it continued to date, and expect to get it to-
morrow. As soon as we get it from Byrne, we will send it to the pur-
chaser as he wishes his attorney to pass on the title." Apparent de-
fects in the title are mentioned. October 4th, plaintiffs wrote defendant
stating at length some half dozen defects in record title as appeared
from the completed abstract. One of these arose because a grantor

"Krups" had deeded in the name "Krepps." Affidavits were recorded in an attempt to cure these defects, and the abstract of title was continued and forwarded to Kunze. During all this time, by letter, plaintiffs had fully explained all delays to both purchaser and defendant. On October 15th they wrote Kunze: "We send you herewith the abstract for section 21, and believe you will find it shows perfect title." On October 22d, he replied: "I send you abstract and objections as found by my attorney. Wish you would see to it to have the objections corrected." The principal objection was the variance between "Krepps" and "Krups." Defendant was then asked by plaintiffs to produce the original deeds concerned, that the record might be corrected. He could not find them. Meanwhile plaintiffs forwarded a contract of sale to Kunze for his execution. He answers: "Yours of November 12th, with contract inclosed, received. Will return them properly signed upon receipt of abstract showing that title is good. Hope to hear from you soon." Of all these facts and all reasons for delay, defendant was promptly and fully notified by plaintiffs, who also offered to attend to and pay the expenses of an action to quiet title. Defendant made no objection to the sale as being carried forward, but tacitly consented to it and its terms. Plaintiffs gave him the name of Kunze, the purchaser. In reply to a long letter of October 27th, of plaintiffs to defendant, fully apprising him of all reasons for delay, and urging that the deeds in question be produced, defendant wrote plaintiffs on November 3d: "It loks to me like a clear case of sparring for time on the part of *your* customer. As land values are increasing fast in North Dakota, I shall be obliged to use my own judgment about closing this sale, at all after this long delay." To this letter plaintiffs replied three times under dates of November 6th, 14th, and 21st, fully stating circumstances, assuring defendant that Kunze was not seeking any delay, but was anxious and ready to close the deal as soon as the defect in the title could be cured, and that "your money is ready just as soon as you give good title and deliver a contract for title as per your agreement." "Kunze is now ready, and has been ready all the time, to fulfil his part of the agreement, and the delay is no fault of his," and to produce the deed,—"if you can find this deed it will clear the title;" and "that in case you cannot find the deed we will bring suit to quiet title at our expense, *as we have sold the property and must deliver it.*"

"Kunze, as we wrote you before, has a deposit in the First National Bank of this city as payment on your section, to be delivered to you *when you furnish a good title.*" They also took up a search for the lost deed with Mrs. Krepps, receiving from her a telegram that the "deed is not among Mr. Krepps's papers," of which fact they notified defendant immediately. In spite of this on November 23d, defendant wrote plaintiffs: "Your letter of the 14th received. I regret very much to be obliged to call this deal off. The time has now passed when I need the first payment. The time the attorneys are taking is away beyond all reason, and objections they are offering in the face of the affidavit I sent you from Krepps makes me feel the old deed from Moss to Krepps will help them very little. It is always easy for attorneys to pick flaws in an abstract of title, and in this case it seems to me they have gone the full length. Any reasonable expense you have been to in trying to clear this title, I will pay. Next year when I put this land on the market I will give you the exclusive agency." Notwithstanding this, plaintiffs, while informing Kunze of the situation, still continued negotiations, attempting to put the deal through. The defendant refused to do anything further. On January 18, 1907, he writes plaintiffs, "You have my abstract for section 21. Am anxious to have title to this land cleared up, so in the future there will be no delay in giving the buyer a perfect title. As I wrote you in November, I want to give you the exclusive sale of this land for 1907, so wish you would kindly look this matter up and hope to hear from you in the near future." Thus he acknowledged his record title was defective. On the trial, defendant was called for cross-examination under the statute, and admitted that he had procured Kunze's name from plaintiffs, and that in January or February he had written one or more times to Kunze in an attempt to close the sale to Kunze without dealing through plaintiffs. This is a clear evidence of an intent to deprive plaintiffs of their commissions, and inferentially that that was the reason defendant refused to perfect his title and convey according to his agreement. There is ample proof of Kunze's ability to perform. The letters show the utmost of good faith on his part as well as on the part of the plaintiffs. Defendant had agreed to "furnish an abstract showing perfect title" in him by his acceptance of plaintiffs' propositions in their letters of September 8th and 14th. The evidence sustains the findings, and estab-

lishes beyond question the acceptance and entering into of the contract by defendant to convey upon the terms set forth in the complaint and admitted in the answer, and that defendant knew plaintiffs had commissions coming from Kunze on the sale being consummated. And that he wilfully and without cause refused to furnish as he agreed to do, as a condition precedent to payment to him or acceptance of his title by Kunze, an abstract of title showing perfect title in defendant to the land he had agreed to convey. Defendant deliberately breached the contract.

Assignments of error taken to the reception of evidence, the denial of defendant's motion to dismiss made at the close of the case, and exception to the findings, are all covered by the foregoing discussion.

The assignment based upon the overruling of defendant's objection to all testimony because the complaint did not state a cause of action, a demurrer *ore tenus,* was disposed of when it was held that the complaint was not subject to demurrer.

The many exceptions to the findings are likewise not well taken because the findings are but the equivalent of a restatement of the allegations of the complaint. They must, therefore, be held sufficient to support a judgment.

Defendant claims that there is no proof of plaintiffs' employment by him. The proof is sufficient to show an employment to find a purchaser and to establish that plaintiffs were virtually go-betweens as to both parties, with the full understanding and acquiescence of both. Defendant's letters refusing to convey recognize a liability of defendant to them under an employment. He offers to compensate them for moneys he has caused them to expend in perfecting his title, and promises that next year he will give them the exclusive sale of this land. His last letter in January, 1907, desires them to clear title. There is sufficient evidence to sustain the finding of employment if it be considered that an employment is necessary. The findings have the force of a verdict.

Defendant seeks to apply to the findings the rule announced in Louva v. Worden, and states that defendant never agreed to give the $2 per acre excess as commissions. Plaintiffs' recovery does not stand upon that hypothesis. Nor do the findings for reasons heretofore discussed at length.

Appellant urges that "plaintiff must first prove that he has found and produced to the defendant a person ready, willing, and able to buy, and who offered to the defendant to buy on the terms alleged." What has been said on the sufficiency of the evidence answers this contention and fully justifies the finding that such a purchaser was found willing, ready, and able to purchase and was produced to the defendant, who was notified thereof, and of the fact that the plaintiffs virtually had sold to him. Only defendant's defective title prevented a consummation of that sale, and kept defendant from receiving his full price, as well as prevented plaintiffs from receiving their commissions from Kunze. 19 Cyc. 246; Flynn v. Jordal, 124 Iowa, 457, 100 N. W. 326.

Appellant says there is no evidence that Kunze's offer to plaintiffs was ever submitted to defendant, and that "the offer submitted must have been the identical offer received by plaintiffs or there could have been no acceptance." This rule of law has no application under the facts. The seller accepted the offer communicated, agreeing to receive in full of the purchase price $15 per acre net to him, and treating buyer as plaintiffs' purchaser. In his letter of October 1, he says: "If your man is ready, can see no reason why *you* can't close this deal this week." In his telegram of acceptance he says, "I accept your proposition of fifteen net to me." In his letter of November 3d, he says: "It looks to me like a clear case of sparring for time on the part of your customer." In his letter of January 18, 1907, he says, as an excuse for violating his contract and to escape liability, "I want to give you the exclusive sale of this land for 1907." It would appear that defendant assumed he did not have the land listed exclusively with plaintiffs even at the time when plaintiffs were selling it. Defendant's liability is fixed by the offer that he accepted and the resulting contract, it not being vitiated by fraud or bad faith on the part of the plaintiffs. Nothing of that kind is pleaded. While defendant was under obligation to convey he was under no contract liability for commissions, except as it is incidental to the breach of his contract with both Kunze and plaintiffs.

Assignments are based upon the denial of the motion to dismiss as well as upon the findings wherein appellant erroneously assumes that an obligation rested upon Kunze to pay $500 cash when defendant accepted

his offer. Defendant overlooks that this payment was conditioned only upon Kunze's receipt and approval of an abstract of title, showing perfect record title in defendant. That defendant so understood his obligation is established by his own act in attempting to furnish such an abstract. This matter has already been discussed.

Appellants contend that under the construction of the word "net" in Louva v. Worden, 30 N. D. 401, 152 N. W. 689, the measure of damages would be the reasonable value of the plaintiffs' services rendered, and that no evidence was offered thereof, but instead a recovery was had upon the theory of a right to recover the $2 per acre excess as upon contract. The plaintiffs' measure of damages is not determined by the terms of plaintiffs' contract with defendant, if any there be. Instead his recovery is for damages resulting from defendant's breach of the contract with Kunze. Defendant had agreed with plaintiffs to convey to their customer upon the terms and with knowledge that plaintiffs were receiving a profit as go-betweens for consummating the purchase and sale. The meaning of the word "net" is-in nowise involved except as it might limit the purchase price defendant was to receive. The measure of damages must be the profit coming to them from Kunze. That defendant did not know its exact amount is immaterial, inasmuch as he knew or had reason to believe commissions would be due plaintiffs from Kunze, and he was not misled. Plaintiffs did not endeavor to conceal anything from him. Before breaching his contract he could have ascertained any resulting damages. He knew they were getting their commissions from Kunze and had accepted the offer to convey to Kunze with knowledge of and upon that condition. No one would contend (under the proposition made by letter by plaintiffs to defendant and accepted by him as the basis for subsequent dealing) otherwise than that plaintiffs would look elsewhere than to defendant for their profits. Had the deal been consummated and the purchase effected at $15 per acre as between the seller and the purchaser with no $2 per acre margin, and were the plaintiffs here suing for the reasonable value of their services, defendant could urge as a complete defense that the price he was to receive was net to him with the plaintiffs to obtain payment for their services from the purchaser; and could cite excerpts from all his letters emphasizing the truth of his contention. Every communication, from the telegraphic acceptance to the close of correspondence, from

him is in harmony with such a defense. If he was obligated to plaintiffs to transfer to their purchaser (that he was, see Cavender v. Waddingham, 2 Mo. App. 551–555), he was liable to them for a breach by him of that obligation and resulting damages to plaintiffs, the measure of which under Atkinson v. Pack, 114 N. C. 597, 19 S. E. 628, under parallel facts is declared as "the amount he (broker) would have received as commission from the intending purchaser had defendant complied with his contract."

It has been stated that it was immaterial that defendant did not know plaintiffs were to receive from Kunze $2 per acre as their profits. The damages recoverable are controlled by the common-law rule for breach of contract, codified in § 7146, Comp. Laws 1913. They are "the amount which will compensate the party aggrieved for all detriment caused thereby, or which in the ordinary course of things would be likely to result therefrom." The question next arises as to whether the full amount of the commission must have been in the contemplation of the parties when defendant agreed to convey to plaintiffs' purchaser. Many different common-law rules apply according to the class of property and the circumstances. Where the parties contract with reference to personal property having a market price, they contract with reference to market price in case of breach of contract, and the market price usually limits the recovery. Where the property has no market price, recovery usually may be had of all reasonable damages actually sustained. But, where property is purchased with knowledge had by the vendor that the vendee intends to resell it to fulfil a contract of sale already made, the vendor will be held to contract with reference to the profits, whether known or unknown, that his purchaser may make from reselling to the subpurchaser, and damages equivalent to such a profit may be recovered of the vendor where he defaults in fulfilling his obligation. Such a contract is analogous to the one at bar. The contract to convey was made with reference to and included the collateral contract that would arise simultaneously between plaintiffs and their purchaser, and under which, to defendant's knowledge, plaintiffs would make their profits for the entire transaction. This must be held to have been within defendant's contemplation when he contracted with reference thereto. And also when he breached the contract by refusal to convey inferentially at least *mala fides*. 8 Am. & Eng. Enc. Law,

590 et seq.; note in 52 L.R.A. 209–240 et seq. citing much authority. Beck v. Staats, 16 L.R.A.(N.S.) 768, and note (80 Neb. 482, 114 N. W. 633); Houston & T. C. R. Co. v. Wright, — Tex. Civ. App. —, 46 S. W. 884; Sanderlin v. Willis, 94 Ga. 171, 21 S. E. 291; 13 Cyc. 155 D; Sutherland, Damages, 3d ed. §§ 75–78; Sedgw. Damages, 9th ed. §§ 148, 156–158, 161–163; Munson v. McGregor, 49 Wash. 276, 94 Pac. 1085; Also 8 R. C. L. pp. 462, 463; Missouri P. R. Co. v. Peru-VanZandt Implement Co. 73 Kan. 295, 6 L.R.A.(N.S.) 1058, 117 Am. St. Rep. 468, 85 Pac. 408, 87 Pac. 80, 9 Ann. Cas. 790, 20 Am. Neg. Rep. 334.

Distinctions are drawn by the authorities as to the good faith of the vendor in entering into and in breaching the contract; and the prevailing rule is that when the vendor acts *mala fides* the rule of damages applicable to torts is applied as the measure of damages resulting from breach of the contract. And the vendor is held in damages for the full loss of profits that would have accrued to the injured party from his bargain but for the breach of contract by the vendor. Notes in 52 L.R.A. 242 and 16 L.R.A.(N.S.) 771, citing much authority. And this case at bar is clearly within the *mala fides* rule, as stated. Defendant capriciously, arbitrarily, and entirely without justification, refused to either convey or permit plaintiffs to perfect his title at their expense by an action for that purpose, as they offered to do to enable him to convey to a willing purchaser, ready to wait until title could be perfected and the transfer made. Not only that, but soon after thus breaching his contract, and apparently to quiet plaintiffs he assures them that he will allow them the exclusive sale of said land for the coming year, and then secretly attempts to resell independently of plaintiffs, to the very person with whom he had a short time before been dealing through plaintiffs; whom he knew was plaintiffs' customer, and whose name and address he procured from them, and because of which former deal through them he knew was an able and satisfactory purchaser, because he had in the first deal accepted him as such. This is proved by defendant's letters and from his own cross-examination. This is ample to warrant a finding that he refused to convey in order to prevent plaintiffs from realizing their profits on a deal all but consummated, and that defendant attempted thereby to secure their profits himself by selling direct to plaintiffs' customer presumably for $17 per acre, the full price such

purchaser would have paid in the first instance. Under such circumstances the measure of damages recoverable by plaintiffs is the amount of profits lost by the defendant's refusal to convey, the amount sued for. Ward v. McQueen, 13 N. D. 153, 100 N. W. 253.

Plaintiffs raise many objections to the sufficiency of the contract of sale. The evidence shows the contract to have been reduced to writing and identical with the accepted offer to defendant and was transmitted through plaintiffs to Kunze for his signature and was approved and accepted in terms by him, he writing that "will return them properly signed upon receipt of abstract, showing that the title is good." Every detail was thus made definite. This establishes Kunze was prima facie ready and willing to purchase. Flynn v. Jordal, 124 Iowa, 457, 100 N. W. 326. The reason why the sale was not consummated was nothing of that kind, but was solely because of the condition of the record title. As to this it will not be presumed that "Krups" and "Krepps" are one and the same person, in the absence of proof under the reasoning of the recent holding of Turk v. Benson, 30 N. D. 200, L.R.A.1915D, 1211, 152 N. W. 354. And under Bruegger v. Cartier, 29 N. D. 575, 151 N. W. 34, and note in 38 L.R.A.(N.S.) 3, the title proffered was not a marketable one. Kunze had a right to refuse acceptance of such title. Judgment is ordered affirmed.

Goss, J. (after rehearing had). As stated in the foregoing opinion, this case subdivides into (1) discussion of the sufficiency of the complaint under the demurrer, and (2) alleged errors of law at the trial. The first half of the main opinion was devoted to the first question. The second will now be more fully treated.

Upon the trial there is found a departure from the theory upon which the issue was tendered in the pleadings.

Trial was had upon the theory, entertained by both the counsel and the court, that the proof was sufficient to establish an implied contract that the $2 per acre excess in selling price over the "net" price to defendant was commissions to the brokers for procuring a purchaser. The sufficiency of the evidence to establish this contract, whether it be termed an express or implied contract, according to the construction placed upon the letters and defendant's acceptance, never occurred to either of the parties to challenge for a moment until new counsel

entered the case on this appeal. Many other points were raised on trial, but not this. Many of the trial questions, in fact all of them mentioned in the defendant's motion to dismiss at the close of the case for failure of proof, have been abandoned on appeal. Instead, for the first time, the sufficiency of the evidence to establish the implied or express contract for commissions is attacked. It would be useless to recite the record to verify this, as it is beyond contradiction. Throughout trial is was tacitly assumed that the commission plaintiffs were entitled to was $2 per acre, and that this was to come not from Van Vranken, but from Kunze; but that because the fund coming from Kunze out of which they were to be taken never came into existence because Kunze never paid over the full amount of it, defendant asserted that damages could not be recovered of him. That contention is one that has been urged in similar cases. It may be found advocated in Hayes v. McAra, 166 Mich. 198, 131 N. W. 535, 35 L.R.A.(N.S.) 116, on page 118, also for a recovery of real estate brokerage commissions. A theory of defense upon trial clearly outlined was adopted by defendant, perhaps after a search of precedent. The reason for this change in defense is readily apparent. This cause was tried in September, 1913. Judgment was entered October 7th that year. New counsel for defendant appear with his trial counsel on this appeal. Said new counsel first appearing in this action subsequent to the judgment appealed from are those who prosecuted the appeal in Louva v. Worden, 30 N. D. 401, 152 N. W. 689, decided in May, 1915. Said counsel have briefed this appeal along the same lines that they successfully urged and obtained a reversal under in Louva v. Worden, and they emphatically contend that this case must be controlled by that precedent. Therefore, for the first time and on appeal, defendant presents a new issue, *i. e., whether the accepted theory of the trial was correct in assuming that the $2 margin was the plaintiffs' commission.* They urge on appeal, as they contended in Louva v. Worden, that the recovery can only be for a reasonable commission, and that as the action is based upon the contract instead of upon the *quantum meruit* it must fail; and that the recovery allowed upon the opposite theory on the trial that the evidence was sufficient to establish a contract right to commissions at $2 per acre was erroneous either as proof of or upon the measure of damages. This is an entire change of front and a change

on appeal from the accepted theory on the trial. That on appeal the parties are held to the theory upon which trial was had, whether right or wrong, has become well established. But a few of the recent adjudications are: Peterson v. Conlan, 18 N. D. 205, 214, 119 N. W. 367, where the parties were not permitted to change front and after trying a case upon a common-law theory of liability, on appeal attempt to sustain recovery as upon a statutory liability; and in Movius v. Propper, 23 N. D. 452, 136 N. W. 942, wherein it is said: "The case was tried in the court below upon the theory that he should account to plaintiffs for such use, and this court, in deciding the case, will not permit a change in the theory of the case thus adopted by the parties in that court." Both opinions were by the present chief justice. See also Lynn v. Seby, 29 N. D. 420, L.R.A.—, —, 151 N. W. 231, wherein, quoting from the syllabus, it is stated: "Judgment was awarded on the theory that the complaint constituted a basis for the recovery. Defendant now seeks to urge on appeal that as the complaint is upon an *express contract,* judgment as upon *quantum meruit* should not have been ordered. Held, that on the record this constitutes an attempt to change the theory of trial, and the appellate court will pass upon the same issues only as those presented to the trial court, and will not permit defendant to urge the additional issue that the complaint is insufficient to support the judgment." The attempt in Lynn v. Seby was identical to that here made. The parties on this appeal can no more change the theory of trial concerning the proof than they can as to the pleadings. Authority might be multiplied. Appellant is attempting to do the impossible, *i. e.,* change his theory of trial to bring it under, and that it may be controlled by, precedent lately announced, that, had it been availed of at the trial perhaps might have favored him. This eliminates the major portion of appellant's brief.

However, it may be remarked in passing that Louva v. Worden, announces no doctrine necessarily controlling to effect a dismissal of this case. This is a law action for damages and a law appeal presenting a review of error only. If the evidence be sufficient, under the voluminous correspondence and the written acceptances by defendant of the terms of sale proposed by plaintiffs to him, to have taken to the jury the question of fact of whether it was understood between the parties that plaintiffs' commissions should come from Kunze, and not from de-

fendant, and that the $15 per acre should be net to the seller, with the broker to receive any excess in selling price as his commissions from the purchaser, then Louva v. Worden cannot control.    And there is substantial proof that such was the understanding.    It is at least sufficient to have carried the question to the jury for its determination as a matter of fact.    It is to be noted that this case is to be differentiated from Louva v. Worden in many particulars.    There was here no mere listing for sale, but instead *an acceptance of an offer* of purchase on terms designated by the seller as "net" to him.

Exception is taken to our findings in the main opinion that Kunze's name and address was procured by defendant from plaintiffs.    The evidence fully justifies that finding.    Defendant testifies that prior to negotiations he did not know of Kunze, and that he "never saw him." That defendant was a traveling salesman, with Iowa his field for work. The correspondence gives Kunze's name and his residence as in Iowa. In their first letter, plaintiffs stated they had showed defendant's land "to an Iowa man yesterday."    Again, in their letter to defendant of October 3d they stated, "As he lives in Iowa this must take about a week before we can get the opinion of his attorney."    In their letter of November 14th to defendant plaintiffs state, "Mr. Kunze, the purchaser, is ready to pay the balance of the first payment to you whenever the title is clear." This is reiterated in their letter to him of November 21st.    And defendant himself writes to Kunze in February following his refusal in November to transfer title to him.

Defendant testifies:

Q. Did you not write to Kunze in the month of February, 1907, asking him why the deal with Harvey Harris & Company was not closed?

A. Yes, *I wrote him,* but I don't remember what I wrote him.

Q. To that effect, was it not?

A. *I think it was.*

Q. *Did you not write him asking him,* if the title is clear so your attorney would consider it good, *will you then be willing to close the deal?*

A. *I may have done it.*

Kunze, evidently in honesty and fair dealing, wrote to plaintiffs concerning defendant's corresponding with him. Kunze waited until January 25, 1907, the date of his last letter to plaintiffs, before recalling his deposit with the bank here on the purchase. On that date he writes: "I am sorry that this is delayed so long, but insist title shall be good. I do not want to get into a lawsuit. If owner don't come to terms soon I shall withdraw the deposit in the bank. It will soon be the 1st of March and too late to send a tenant." The only terms open was that record title be furnished by defendant. Defendant admits that in February he is corresponding with Kunze concerning closing the deal, while on January 18th it is proved by his letter that he had written plaintiffs, "I am anxious to have title to this land cleared up so, in the future, if the land is sold, there will be no delay in giving the buyer a perfect title. As I wrote you in November, I want to give you the exclusive sale of the land in 1907, so wish you would kindly look this matter up and hope to hear from you in the near future." The next month he is writing Kunze direct, ignoring plaintiffs. If it be said that he intended to deal with Kunze through plaintiffs, and had no ulterior motive in writing Kunze, then why did he write him at all after he had written plaintiffs the letter of November 23d, stating, "I regret very much to be obliged to ask you to call this deal off. The time is now past when I need the first payment?" He admits attempting to deal in February. The proof discloses plaintiffs to have been in ignorance of this, as they ascertained it not from defendant, but from Kunze. The only reasonable conclusion from defendant's testimony and his letters is that, after they had put him in touch with a buyer, either he intended to deal independent of plaintiffs and defeat any claim for commissions, or he had learned that plaintiffs were making $2 per acre margin as commission and desired it for himself. In either event his conduct was reprehensible.

Nor can he, under the issues tendered and the proof made, question Kunze's ability to pay. Dotson v. Milliken, 209 U. S. 237, 52 L. ed. 768, 28 Sup. Ct. Rep. 489, an analogous case for real estate commissions earned by finding of a purchaser. The syllabus directly applicable reads: "The inability of the prospective purchaser to complete the purchase is not available as an afterthought to defeat the right of the broker employed to find a purchaser to recover his agreed commissions,

where the sale failed wholly through the fault of the owner, who made no objection to the purchase." Also Hannan v. Moran, 71 Mich. 261, 38 N. W. 909; Condict v. Cowdrey, 5 N. Y. Supp. 187; Hugill v. Weekley, 64 W. Va. 210, 15 L.R.A.(N.S.) 1262, 61 S. E. 360; Putter v. Berger, 95 App. Div. 62, 88 N. Y. Supp. 462; Seidman v. Rauner, 51 Misc. 10, 99 N. Y. Supp. 862; Frank v. Connor, 107 N. Y. Supp. 132; Roberts v. Kimmons, 65 Miss. 332, 2 So. 736; Davis v. Lawrence, 52 Kan. 383, 34 Pac. 1051; Conkling v. Krakauer, 70 Tex. 735, 11 S. W. 117; Smye v. Groesbeck, — Tex. Civ. App. —, 73 S. W. 972; Sullivan v. Hampton, — Tex. Civ. App. —, 32 S. W. 235; Krahner v. Heilman, 16 Daly, 132, 9 N. Y. Supp. 633; Hart v. Hoffman, 44 How. Pr. 168; Buckingham v. Harris, 10 Colo. 455, 15 Pac. 817; Goss v. Broom, 31 Minn. 484, 18 N. W. 290; Cook v. Kroemeke, 4 Daly, 268, 269; McFarland v. Lilliard, 2 Ind. App. 160, 50 Am. St. Rep. 234, 28 N. E. 229; Harwood v. Diemer, 41 Mo. App. 49. All these are brokerage cases closely analogous. Consult exhaustive note in 43 L.R.A. 593, at page 609, under "Defective title," citing scores of cases. Also note in 44 L.R.A. 593. No branch of the law is better settled than that defendant cannot be heard to urge the inability of Kunze to pay as a defense under the record facts. The cases of Watters v. Dancey, 23 S. D. 481, 139 Am. St. Rep. 1071, 122 N. W. 430, and Dent v. Powell, 93 Iowa, 711, 61 N. W. 1043, relied upon by appellant, do not apply. In both there was a failure of proof of *willingness* to buy. In the former the opinion states, "There is no evidence that Bell was ready and willing to make the purchase." In the latter case the purchaser refused to complete his purchase, and the holding from the syllabus is, "It is not sufficient that it could have been made by suit" against the purchaser, as the seller cannot be compelled to resort to suit to complete the purchase that the brokers may collect their commission.

But the proof discloses that half the initial payment had been on deposit in the bank since the first week of negotiations, and that Kunze was ready to forward the balance with the signed contract at any time that the admitted defects in record title were cured. Munson v. McGregor, 49 Wash. 276, 94 Pac. 1085. Defendant's letters admit that his record title is defective. Under the authorities it was not a merchantable title. The burden was upon him to make it one. Instead,

without cause, he capriciously refused to comply with his part of the contract and deliberately breached it. A tender by Kunze of performance "would have been a useless formality, because the defendant had unequivocally repudiated his contract." Canfield v. Orange, 13 N. D. 622–628, 102 N. W. 313. The time never came when it became necessary for Kunze to advance any money. His preparedness, however, is sufficiently shown, even considering it as raised. Any possible inference that he might have been a mere dummy purchaser for plaintiffs is disproved. There being no error in the record warranting reversal, the judgment is affirmed. As rehearing has been had, remittitur will go forward at once.