## WILLIAM LESLEY *v.* JOSEPH ROSSON.

1. STATUTE OF FRAUDS: SALE OF LAND.—An agreement by which the defendant's lands are to be sold to other parties at an improved value to be caused by complainant's exertions, and after sales were so made that the complainants should receive one-half of the proceeds, he first paying a price agreed on, and performing the acts stipulated to be performed by him to entitle him to his share of the proceeds, is not a contract for the sale of land, and need not therefore be in writing.
2. CHANCERY: JURISDICTION: ACCOUNT.—A court of equity will not entertain a bill for an account even between partners, when the items, both of credit and debit, arise from a special contract, and are few and for fixed and definite sums, and easily ascertained by the verdict of a jury.

APPEAL from the Chancery Court of Tishemingo county. Hon. Jno. W. Thompson, chancellor.

*H. R. Miller,* for appellant.

The contract set forth in the bill of defendant in error is, that if he, Rosson, would use his influence with the railroad company to have the road located over the land of Lesley, and the road should be so located, and if he, Rosson, "*would pay him, said Lesley, eight or ten dollars per acre (the same being the alleged cost of it) for the half-interest in it,*" &c., he, Rosson, "should have half of the proceeds of the sale of said land." The land belonged to Lesley, the title being in him.

It would be difficult to state a case more clearly within the Statute of Frauds.

The contract, as stated in the bill, was for a half-interest in the land. It was not a proposition to form a partnership for the purpose of dealing in lands; but a direct proposition to acquire an interest in lands belonging to Lesley.

The authorities cited by counsel for defendant in error, on the subject of partnership, have no relevancy to the case presented by the bill.

The fact that Rosson was to have one-half of the proceeds of the sale of the land, as a consequence of his purchase of a half-

interest therein, does not make it any the less a purchase of an interest in the land. The right to one-half of the proceeds of a sale could only result, and was evidently intended by the parties only to result, from the purchase of one-half interest in the lands. An interest in the proceeds of the sale of the land is an interest in the land itself.

" Whenever the conferring of an interest in land by one party is the consideration for the promise of the other, the agreement between them must be in writing." Chitty on Contracts, 308. The case of *Smith* v. *Burnham*, 3 Sumner's R. 435–458, 460–462, presents a state of facts very similar to those presented by this record. In that case Judge Story says : " It has been ingeniously agreed that the interest of the plaintiff is in a moiety of the profits, or proceeds of the sale, and not in the land itself; and that, therefore, at least, when the land has been sold by the defendant, the agreement attaches to the moiety of the proceeds. But the agreement, if good at all, attaches also to the land at the time of the purchase ; and it is then an agreement for an interest by way of trust in the land, a sort of springing trust, and it is in virtue of this trust-estate, and of this only, that any right can attach to the moiety of the proceeds. The right to follow the proceeds is a right which, if it exists at all, flows from the interest in the lands, and the trust created in favor of the plaintiff. It is not collateral, but direct. Indeed, the bill puts the agreement as one of copartnership for 'purchasing and selling lands,' " &c.

Precisely the same line of argument, as in the case cited, is ingeniously used in this case to show that the agreement is not within the Statute of Frauds.

In the same case the court says : " It is not the case of a purchase, confessedly paid for out of the funds of an existing partnership, for partnership purposes, and the deed taken in the name of one partner. In each of these cases a resulting trust will arise by operation of law, in favor of the party or parties advancing the money. Here no partnership funds, as such, existed ; and no partnership funds, as such, are shown to have been applied."

The above reasoning is so applicable to the case before the

court, and so conclusive, that no further argument is deemed necessary.

See *Earl of Falmouth* v. *Thomas*, 1 Cromp. & Mees. R. 89; *Henderson* v. *Hudson*, 1 Munf. R. 510.

I submit that the demurrer to the bill ought to have been sustained and the bill dismissed.

*Arnold* and *Hill*, on same side,

Filed an elaborate written argument.

*Reynolds* and *Kinyon*, for appellee,

Insisted that the contract set up in the bill was not an agreement for the sale of lands, but for an interest in the proceeds after sale was made; and in support of this cited 4 Conn. R. 568; 15 Maine R. 201; 10 Wend. 436; 2 Dev. Eq. 363; 2 Sumner, 460; *Evans* v. *Green*, 23 Miss. R. 294; 2 Parsons Con. 312–314; Brown on Statute of Frauds, 260–262.

HANDY, J., delivered the opinion of the court:

This bill was filed by the appellee to recover upon a contract alleged to have been made between him and the appellant a sum of money claimed to be due him.

The bill states in substance, that the complainant was engaged, in the year 1852, as agent of the Charleston and Memphis Railroad Company to procure the right of way for that road over the lands through which it was to pass, and to aid the engineers in selecting the best route for the road, and that he called on the defendant, who was well acquainted with the country, for aid and advice upon the subject; that the defendant suggested, upon their examination of the country, that the best point for that road to cross the Mobile and Ohio railroad, which was then located, was over the land of defendant at a place which was subsequently selected and adopted for the crossing of the two roads; that, in the course of the conferences of the complainant and defendant, the latter proposed to the complainant that, "if he would use his influence with the said Charleston and Memphis Railroad Company to have their road located over the said land of the defendant so as to make said crossing on it,

and the road should be so located, if the complainant would pay
him eight or ten dollars per acre (the same being the alleged
cost of it) for the half-interest in it, (that is, to pay him one-
half of that estimate,) and prepare and lay it off into town lots
and bring it into market, at his, the complainant's, own expense,
and sell it off at auction or otherwise to the best advantage,
then the complainant should have one-half of the proceeds of the
sale of the land, but the title should remain in the defendant,
where it then was, until such sales could be effected;" to which
the complainant assented, and undertook to do as was proposed
"in consideration that half of the proceeds of the sales should
be his, as his share of the transaction:" that owing to unavoid-
able circumstances, which are stated, the location could not be
made before the year 1854, but that it was made in that year
over the lands of defendant referred to, and mainly through
the instrumentality and exertions of the complainant; that the
final price agreed on to be paid by complainant for his half in-
terest in the proceeds of the sale of the land was one thousand
six hundred dollars, and in the spring of 1855 he offered to pay
defendant one thousand dollars, but that defendant replied that
he did not need it then and that complainant had better keep it
to pay the expenses which he would be at in performing his
part of the contract, and not to pay it then; that various per-
sons made application to complainant to purchase the land;
whereupon complainant conferred with the defendant whether
the original plan of preparing the lands—laying them off in
town lots and selling them—should be pursued, or whether
they should be sold as a whole; and it was then agreed that, if
a sale of the whole could be effected at thirty thousand dollars,
it should be so made, in which event complainant was to have
his share of the sale as originally agreed on, making a just
allowance for the expenses he would have to incur in clearing,
laying off and selling the lots, and for the one thousand six
hundred dollars, his part of the price agreed to be paid; that
the complainant then made several ineffectual efforts to sell the
land to various persons, and afterwards that the defendant sold
the lands for the sum of thirty thousand dollars to parties, re-
ceiving five thousand dollars in cash and notes for twenty-five.

thousand dollars, bearing interest, and executed a deed to the purchasers; that the complainant afterwards called on the defendant relative to the sale, who promised him that, after making collections, he would make all things satisfactory to complainant, as before agreed on, and that he confided in this; that the defendant has received the entire amount of said purchase-money, amounting, principal and interest, to thirty-three thousand five hundred dollars: one-half of which complainant claims under the contract, less the sum of one thousand six hundred dollars and the expenses, which could not have exceeded three hundred dollars, thereby leaving due the complainant fourteen thousand eight hundred and fifty dollars for his part of the transaction.

The bill further alleges that complainant was put to great trouble and expense in effecting the location of the railroad on the defendant's lands, and that his efforts were the main cause of the location being so made, and this service was the main consideration with the defendant in making the contract, and that the efforts and services of the complainant have caused the land to be of more than double the value they would have had otherwise. The prayer is for an account and payment of the sum due complainant.

The defendant demurred to this bill on two grounds: 1. That the contract set up was for the sale of lands, and is void under the Statute of Frauds. 2. That the remedy, if any, is at law.

This demurrer was overruled, the defendant answered, and on final hearing on pleadings and proofs a decree was rendered for the complainant, from which this appeal is taken.

The first error assigned is the overruling of the demurrer.

It is, first, insisted that the contract set up in the bill was for a sale of lands; and, being in parol, is therefore void under the statute. But this is clearly not tenable.

The contract, as stated, in effect was not for the purchase of the land or a part of it, by the complainant, but for an interest in the proceeds of the sale. It was agreed that the defendant should retain the title, to be conveyed to purchasers when sales should be effected; and it was only after sales were made to other persons that the complainant was to be entitled to his share of the avails of the sale. The bill distinctly avers, and

the contract as stated shows, that the sale of the land or any part of it was not the object of the contract, but that the complainant was to have an interest in it only to the extent and for the purpose of entitling him to one-half of the proceeds of sales which should be made; and that his efforts and services in procuring the location of the railroad to be made upon it, and in performing the other acts agreed to be performed by him, in order to enhance the value of the land and effect sales of it at increased prices, were the main consideration which induced the parties to enter into the contract. It was, in substance, an agreement by which the defendant's lands should be sold to other persons at an improved value to be caused by the complainant's exertions, and, after sales were so made, that the complainant should receive one-half of the proceeds, first paying the sum agreed on by the parties and performing the acts agreed to be done by him, in order to entitle him to his share in the avails. It is very clear that this was not a contract for the sale of the land to the complainant. But it is insisted that, thus regarded, the second ground of demurrer was well taken.

The bill places the complainant's claim upon the ground that, by the contract, he was entitled to the half of the proceeds of the sale, as a compensation for his services; and it states the amount specifically to which he is entitled, subject to a deduction of one thousand six hundred dollars, and for the sum to be allowed for expenses which he had undertaken originally to incur, but which were not incurred in consequence of the new agreement dispensing with them, which are stated not to be exceeding three hundred dollars. According to the statements of the bill, the matters of debit and credit were distinctly fixed, and the only matter not ascertained was, the sum to be deducted for the expenses not incurred. It is plain that that was a matter susceptible of proof before a jury as upon a *quantum meruit;* and the entire claim is such as is every day the subject of suits at law. It is an account for a fixed and stated sum due upon a special contract, with a credit for a fixed sum and also for an amount fully capable of ascertainment by a jury. On what ground, then, can a court of equity take jurisdiction of such a claim? There is no necessity for invoking its aid on

the ground of stating an account between the parties, for that could be done more readily and with less expense by a trial before a jury.

It is said that the transaction between the parties amounts to a partnership. But it is not every indebtedness between partners that calls for the interposition of a court of equity; and it is as well settled in such transactions, as in those between other parties, that a court of equity will not interpose where the remedy is complete and adequate at law. When a transaction between partners depends upon a mere matter of account and contract, and is susceptible of full ascertainment at law, equity will not interfere with that jurisdiction. Here the transaction is plain and simple, not involving a statement of complicated partnership accounts, and having no feature taking it out of the jurisdiction of a court of law. If the jurisdiction of a court of equity were maintained in this case, it is difficult to conceive a case of an account where such jurisdiction would not be entertained.

We are, therefore, satisfied that this ground of demurrer was well taken, and the decree is reversed, the demurrer sustained, and the bill dismissed.