HAYES v. McARA.

BROKERS — HOMESTEAD — CONTRACTS — STATUTES — HUSBAND AND
WIFE—CONSTITUTIONAL LAW—DEEDS.

   A broker is entitled to recover his commission for finding a
   purchaser of defendant's homestead, under a contract not
   signed by the wife of defendant, stipulating that the owner
   should receive $6,000, part in cash, and the remainder in a
   mortgage of the property, the broker to have all that he
   could secure above the price named, in payment of his ser-
   vices; and, since it conveyed no interest in the land, the provis-
   ions of the Constitution of 1909, Art. 14, § 2, requiring the
   wife's signature to any conveyance of the homestead, do not
   render the instrument invalid.[1]

Error to Genesee; Wisner, J. Submitted April 17, 1911.
(Docket No. 84.) Decided June 2, 1911.

Assumpsit by Stephen V. R. Hayes against David E.
McAra on a broker's contract. A judgment for defend-
ant on a verdict directed by the court is reviewed by
plaintiff on writ of error. Reversed.

*Charles E. Ward*, for appellant.

*Brennan, Cook & Gundry*, for appellee.

MOORE, J. A writing was made reading:

               "DAVISON, November 3d, 1909.
"S. V. R. HAYES,
    "Grand Rapids, Mich.
   "I hereby give you the exclusive agency, and author-
ize you to sell my farm in Genesee county, Michigan, de-
scribed as follows: The south half of the southeast quar-
ter of section (7) township (7) north, range (8) east, for
the sum of six thousand dollars ($6,000), net to me, on

---

[1] Negligence, fraud, or default of principal, or defective title as
affecting real estate broker's commissions, see note in 43 L. R. A.
593.

the following terms: $300 cash at time of sale, and $3,400 when possession is given, balance on mortgage, due in four years at 6%, privilege to pay $100 or more on any interest day.

"I agree that you shall add to my price whatsoever amount you may see fit, for your service in making the sale, and deduct such amount from the purchase money, and turn over to me the balance, and I will not make a lower price on farm than you do during the life of this agency, nor will I put any obstacles in your way, in your efforts to make sale of farm. I agree to enter into a contract of sale with any person you may sell the farm to, at the time sale is made, and when such purchaser has paid $3,700 I will then give him, or her, a warranty deed of said farm, taking back a mortgage on the same for the unpaid balance of purchase price, and payable not later than 1914.

"At the time you make the sale of the farm, or as soon thereafter as possible (not to exceed ten days), I will deliver to you for the buyer, a complete abstract of title and tax history of said farm, which shall show a perfect record title.

"This agency shall be in force, and continue from this date up to and including Nov. 3d, 1910.

"Dated at Davison, this 3d day of Nov. 1909.
"DAVID E. MCARA."

The plaintiff immediately made efforts to sell the farm, took photographs of the buildings, and in a short time informed the defendant he had a purchaser ready to buy the place. It is claimed the plaintiff had negotiated a sale of the place at $6,500, and demanded that the defendant, if he refused to sell the place, pay him for his services, according to the value of it, fixed by the contract. This the defendant refused to do, and this suit was brought.

It is plaintiff's claim that there is only one question involved in this case, viz., whether the contract to pay for this service was void because the wife did not sign it. This claim is based upon the fact that a verdict was directed in favor of defendant for that reason. The claim of the plaintiff is as follows:

"Surely, this contract does not provide for a sale of the

land to the plaintiff. Plainly, the object of the contract is the sale by the defendant of his farm, through the agency of the plaintiff, the defendant to receive his price for the farm, and the plaintiff a profit, by way of compensation for his services. The provisions for the making of a deed and contract are incidental, and serve only to define the duty of the plaintiff in earning the stipulated commission. The plaintiff was not to become the owner of the land, or any interest in it. The agreement was that defendant would contract, with, and deed this farm to, 'any person you may sell the farm to.' The first sentence of the contract defines the relations of the parties, and precludes the inference that the parties sustained the relation of vendor and vendee:

" 'I hereby give you the exclusive agency, and authorize you to sell my farm in Genesee county, Michigan.'

"The next paragraph begins:

" 'I agree that you shall add to my price whatsoever sum you may see fit for your service in making the sale, and deduct such amount from the purchase money, and turn over to me the balance, and I will not make a lower price on farm than you do, during the life of this agency, nor will I put any obstacles in your way, in your efforts to make sale of farm.'

"And the last clause reads:

" 'This agency shall be in force and continue, from this date up to and including November 3d, 1910.'

" The terms of this contract leave no room to doubt that the plaintiff became the agent of the defendant, employed to perform a certain service. To hold that it is a contract for sale between the parties is to lose sight of the real purpose and intent of the contract, and to substitute a mere detail in the place of the purpose itself. The first paragraph of the contract, after providing for the agency, and giving the description of the land and the price, states the terms on which the agent may offer to sell, as follows:

" '$300 cash at time of sale, and $3,400 when possession is given, balance on mortgage, due in four years, at 6%, privilege to pay $100 or more on any interest day.' "

The defendant contends:

"(1) The contract in question is not a contract for ser-

vices. It specifically provides that defendant shall convey upon the payment of $3,700 and the execution of a mortgage to him of $2,300 by the vendee and that defendant is not to pay plaintiff anything for his services, but that plaintiff's compensation is to be paid out of the excess over and above the price named in the contract. Defendant therefore never promised plaintiff to pay him a cent for services in connection with such contract.

" (2) The contract is entire and inseparable, and, if void in one respect, it is void in all respects. The provisions providing for a conveyance of the property are not incidental to the agency agreement, but are the essence of the contract and until the contract could be consummated by sale the plaintiff was not entitled to any compensation.

" (3) The contract as to the conveyance of the homestead being void *ab initio*, no obligation arises thereunder to pay plaintiff any compensation, as plaintiff was presumed to know that the contract was void and unenforceable, and he cannot predicate a claim for services rendered under such an agreement."

No case directly in point is cited by counsel. The case of *Lawrence* v. *Vinkemulder*, 157 Mich. 294 (122 N. W. 88), being by an equally divided court, simply decides the law of that case. A reference to it will show it easily distinguishable from the case before us. No question of agency was involved in the case. This court in construing the statute of frauds which makes certain contracts void unless in writing (section 9509, 3 Comp. Laws), has used language which may be helpful here. In *Carr* v. *Leavitt*, 54 Mich. 540 (20 N. W. 576), Justice COOLEY, speaking for the court, said:

" This being the plaintiff's case, and it being admitted that the alleged contract was not in writing, the defendant took the objection that the contract was void under the statute of frauds. The trial judge held the objection to be well taken, and directed a verdict for defendant.

" If the contract the plaintiff relied upon was within the statute, it must have been because it contemplated a purchase and then a sale of certain lands. But the plaintiff was to be neither purchaser nor seller, and the contract did not contemplate that in any contingency an interest in the land was to be conveyed to or vested in

him. It contemplated only that in a certain event the plaintiff should receive a share of the moneys that a sale of the land should bring. His interest was therefore in these moneys, and not in the land itself. And the moneys were to be payable to him in consideration of services performed. The profits on the two trades, to be brought about by the plaintiff, were to be taken as the measure of compensation, instead of any other that might have been agreed upon.

"This surely was not a contract 'for the sale of any lands, or any interest in lands,' within the meaning of the statute of frauds. 2 How. Stat. § 6181. The statute contemplates a transaction between parties contracting with each other as principals; and this was not such a transaction. In this case the plaintiff as agent undertook to perform for the defendant certain services, and the defendant undertook to make a compensation therefor, the amount of which should be contingent on the value of the services. It was assumed in *Bunnel* v. *Taintor's Adm'r*, 4 Conn. 568, that such a contract was not within the statute, and there are many express adjudications to the same effect. *Trowbridge* v. *Wetherbee*, 11 Allen (Mass.), 361; *Fiero* v. *Fiero*, 52 Barb. (N. Y.) 288; *Hess* v. *Fox*, 10 Wend. (N. Y.) 436; *Bruce* v. *Hastings*, 41 Vt. 380 (98 Am. Dec. 592); *Bannon* v. *Bean*, 9 Iowa, 395; *Harben* v. *Congdon*, 1 Cold. (Tenn.) 221; *King* v. *Hanna*, 9 B. Mon. (Ky.) 369; *Heyn* v. *Philips*, 37 Cal. 529; *Lesley* v. *Rosson*, 39 Miss. 368 (77 Am. Dec. 679); *Benjamin* v. *Zell*, 100 Pa. 33. Our attention has been directed to no cases which are opposed to these.

"The defendant relies upon a number of decisions by this court which are supposed to have some bearing upon the case, but we fail to perceive their relevancy. Every one of them was a case in which an interest in lands was bargained for, and was to be acquired by one of the parties, in pursuance of the terms of the contract. *Hillebrands* v. *Nibbelink*, 40 Mich. 646, may be taken as an illustration. The alleged verbal contract was that a father would convey to his son a farm, in satisfaction of a certain claim—a contract as plainly within the statute as if the land were to be conveyed for an agreed price in money."

See *Hamilton* v. *Frothingham*, 59 Mich. 253 (26 N. W. 486); *Waterman Real Estate Exchange* v. *Stephens*,

71 Mich. 104 (38 N. W. 685); *Obenauer* v. *Solomon*, 151 Mich. 570 (115 N. W. 696).

These cases we think are controlling as to the contract as it reads, and a verdict should not have been directed.

Judgment is reversed, and new trial ordered.

MCALVAY, BROOKE, BLAIR, and STONE, JJ., concurred.