## Dowell v. Pumphrey, et al.

(Decided December 15, 1922.)

### Appeal from Breckinridge Circuit Court.

1. Brokers—Gaming Contract.—A contract between a landowner and a broker whereby the broker agrees and undertakes to make a given boundary of land bring a fixed sum or pay to the owner the difference between the sum which the land does bring at the sale and the sum so guaranteed, on condition that the broker should have all the land and money realized or left from the sale in excess of the stipulated sum, is not a gambling contract within the meaning of our statutes but is a valid and enforceable undertaking.

2. Brokers—Commissions.—Where the brokers guaranteed the owner that a given tract of land would bring the sum of $16,500.00 in consideration of said owner giving them as a commission for their services all the money and land realized and left over from the said sale above the said $16,500.00, and a part of the land brought $18,000.00; the brokers were entitled not only to the excess in money over $16,500.00 which the land brought but the surplus land unsold or its reasonable value.

MOORMAN & WALLS and MOORMAN & WOODWARD for appellant.

CLAUDE MERCER for appellees.

OPINION OF THE COURT BY JUDGE SAMPSON—Reversing.

Appellant Dowell and appellee Beard were real estate brokers located at Hardinsburg in Breckinridge county.

Appellee, Josephine Pumphrey, was the sole devisee of a large tract of Ohio river bottom land located in Breckinridge county, which land was encumbered by mortgage and other liens to the amount of $14,600.00 by the devisor, and these had all been reduced to judgment, the land ordered to be sold to satisfy same and the day of sale fixed for November 25, 1918. Mrs. Pumphrey and her husband, William G. Pumphrey, were persons of very little business experience and in quite moderate circumstances before the devise of the land to her. The adjudged liens against the land, totaling approximately $14,600.00, were so great that Mrs. Pumphrey and her husband were much afraid they would be unable to protect themselves and all of the land would have to be sold to pay the mortgage debts and would leave them nothing from the estate. They advised with their neighbors and came to the conclusion that they would try to find some person or persons who would be willing to pay off the judgment debts and take less than the whole of the land, thus leaving them a tract of 110 acres known as the home place with its improvements. Their lawyer, a man of good repute, advised them not to make such an arrangement and dissuaded them from entering into such a contract with certain of their neighbors because he thought the land would bring more than the debts. After considering the matter another week the Pumphreys again made up their minds to enter into a contract with some solvent person or persons who would either take part of the land and leave them the homestead, or guarantee that a portion of the land would bring the debt and leave them the 110 acres for a home. With this plan in mind they again went to Hardinsburg and consulted their attorney, who represents them in this litigation, and he again advised them not to enter into such a contract for the reason that it was his opinion the land advertised to be sold on the next Monday would bring more than the debt, interest and cost and would leave the Pumphreys not only a homestead but some cash also; and further said to his clients that if they could not otherwise be reconciled he believed appellant Dowell and appellee Beard, solvent real estate brokers, would enter into such a contract with the Pumphreys and thus guarantee to the Pumphreys the home place of 110 acres and a sum in cash in addition. Having sought out Dowell and Beard the Pumphreys entered into a written contract with them which reads as follows:

"Hardinsburg, Ky., November 18, 1918.

"Whereas, in the actions of A. J. Gross' Executor, etc., v. William G. Smart, etc., pending in the Breckinridge circuit court sales of the real estate which belonged to the late A. J. Gross and Sallie Gross, his wife, both deceased, are ordered to be sold at the courthouse door in Hardinsburg, Kentucky, and whereas, Josephine Pumphrey is the legatee or devisee of said real estate and after the payment of the debts against said estate is entitled to the remainder of said land, if it brings sufficient to pay said debts, approximated at $14,600.00.

"In consideration of M. D. Beard and F. R. Dowell's guaranteeing that 494 acres of the land ordered to be sold on Monday, the 25th day of November, 1918, shall bring $16,500.00, leaving 110 acres of said land not to be sold the said Josephine Pumphrey and William Pumphrey, her husband, agree that any sum over and above said $16,500.00 that said 494 acres of land shall bring shall go to said Beard and Dowell, and said Beard & Dowell agree that if said 494 acres shall bring under said $16,500.00 at said sale, to account to said Mrs. Pumphrey for any shortage between what it might bring at public outcry and said sum of $16,500.00.

"JOSEPHINE PUMPHREY,
W. G. PUMPHREY,
M. D. BEARD,
F. R. DOWELL."

Dowell and Beard set about to find purchasers for the land which by the judgment had been laid off into eight parcels with directions to sell enough thereof to bring the debt, interest and cost, which was estimated to be about $14,600.00. On the day of sale two tracts, totaling 300 acres only, were sold, bringing the sum of $18,000.00, thus leaving unsold not only the home place of 110 acres but about 194 acres additional. At the conclusion of the sale it was agreed between the Pumphreys and Beard and Dowell that the former would pay to the latter all the difference in the sale price between that mentioned in the contract, $16,500.00, and $18,000.00, or $1,500.00, and would convey to them the 194 acres which were not sold; but on being advised by counsel that the contract into which the Pumphreys had entered with Dowell and Beard was unenforceable, they declined to carry out their agreement to convey the balance of the land to Beard and Dowell, or to pay them the $1,500.00

as commissions on the sale, and Dowell commenced this action against the Pumphreys, joining Beard as a defendant, to enforce the written contract, insisting that he and Beard are not only entitled to the $1,500.00 as commissions but to all the excess in the land over and above the 300 acres sold and the 110 acre home place which the Pumphreys were to have. After issue joined by separate answers of Josephine Pumphrey and her husband, the trial court upon a reconsideration of the demurrer to the petition sustained said demurrer, giving as his reason, set out in a written opinion delivered at the time, that "the contract set out in the petition is a wager contract and not enforceable." Appellant Dowell declining to further plead after the demurrer was sustained, the court dismissed his action, and he prosecutes this appeal.

Was the petition subject to demurrer?

Whether the contract sued on is one which the law regards as inimical to it and contrary to public policy, or whether it is a guarantee or indemnity undertaking which the rules of equity will enforce, is the question.

We have a statute against gaming which reads:

"Every contract, conveyance, transfer, or assurance, for the consideration, in whole or in part, or money, property, or other thing won, lost or bet in any game, sport, pastime, wager, or for the consideration of money, property, or other thing lent or advanced for the purpose of gaming, or lent or advanced at the time of any betting, gaming, or wagering to a person then actually engaged in betting, gaming or wagering, shall be void." Section 1955, Kentucky Statutes.

Construing this section of the statute we have held that dealing in futures is gambling. Lyons v. Hodgen, 90 Ky. 280; Dunlap & Company v. Perry, 190 Ky. 291; Betting on an Election—Commonwealth v. Leak, 116 Ky. 540; Betting on Horse Race—McDevitt v. Thomas, 130 Ky. 805; Operating Bucket Shop—Smith v. Western Union, 84 Ky. 664; Faro Bank—Commonwealth v. Monarch, 6 Bush, 301; Pool Selling—Smith v. Commonwealth, 11 Ky. Opin. 224; Playing for Treats, Cigars, Etc.—Marston v. Commonwealth, 18 B. Monroe 490.

It is insisted by appellee Pumphrey that the contract sued on comes within the purview of section 1955, Kentucky Statutes, and is unenforceable. In support of this it is said that the contract clearly evidences a dealing in futures or options which is a species of gambl-

ing, but we cannot accede to this insistence. The Pumphreys, without financial backing and apprehensive lest their entire devise be consumed by the adjudged lien debts, were anxious to and did in effect by the contract engage Beard and Dowell not only to assist them in finding purchasers ready, able and willing to take a less number of acres of the land than the whole and pay not only the lien indebtedness, approximately $14,600.00 and $2,000.00 in addition thereto, but to indemnify the Pumphreys against the entire loss of the inheritance. It was in the nature of a contract of indemnity, an original undertaking on the part of Dowell and Beard to make 494 acres of the land adjudged to be sold bring at least $16,500.00 and thus extinguish the lien indebtedness against the farm and give the Pumphreys $2,000.00 in cash and leave them an improved home of 110 acres. If an indemnity company had written such a contract no one would question its validity. In the case of Elliott, et al. v. Hayes, et al., reported in 8th Gray (Mass.) 164, the action was on a contract whereby one selling stock in a corporation guaranteed that the dividends on said stock would be at least ten per cent per year in consideration of the purchaser of the stock giving to the seller all dividends above ten per cent earned by the stock. The court said: "The action is defended on the alleged ground that it is on a mere wager. And if it were on a wager contract, we should not sustain it. But it is not. The contract, not only in words, but also in its plain design and purpose, is a guaranty to the plaintiffs a certain yearly profit on railroad stock owned by them. And nothing on its face, or in the facts agreed, discloses any illegality or unfairness. We therefore cannot find any reason why the plaintiffs should not recover. In Kirby v. Wright, 2 Myl. & K. 131, a contract by which the defendant guaranteed to the plaintiff that the net profits of his business should amount, for a certain time, to a specified sum, was enforced in chancery, no question being made as to its validity. And in Newmarket Churchwardens, &c. v. St. Andrew, 3 El. & Bl. 94, no doubt was intimated as to the validity of an undertaking to secure to a railway company a yearly dividend of three per cent on its share capital. If the contract, in the present case, had been put into the form of a policy of insurance, it is certain that it would not have been a wager policy. 3 Kent Com. (6th Ed.) 275; 1 Arnold on Ins., 17, p. 276; Smith on Con. (4th Ed.) 258, 259." In

the case of Chauvet v. Ives, reported in 665 N. Y. Supplement 288, one of three claimants to an estate brought an action to enforce an agreement made by him with another claimant that he should have $180,000.00 for his share, provided that if there was an excess of that amount, all the residue should go to the other claimant, and it was held that the promise was an original one to pay the plaintiff $180,000.00 in case the actual amount due was less than that sum, and that the action could be maintained to recover the difference between the amount received and the $180,000.00 agreed to be paid.

While we have held that a contract for the sale of stocks or other commodities to be delivered in the future, there being no intention to actually deliver but that the margins between the price paid and that at which the stock or commodity was selling on the day fixed for the delivery, should pass to the one in whose favor the margin fell, was a gambling contract and unenforceable, we have nevertheless held such contracts were enforceable where actual delivery was intended, and this seems to be the general rule throughout the country. 20 Cyc. p. 926. In the case of Collins v. Alvery, reported in 10 Ky. L. R. 985, it was held that Collins, who to induce Alvey to subscribe to the capital stock of the corporation, guaranteed her a dividend of ten per cent upon all of the paid-up stock if she would allow him the dividend actually earned by the company, that the contract was binding and based upon a sufficient consideration, and was not illegal.

The Herald Publishing Company entered into a written contract with the National Circulation Company by which the latter concern agreed in substance that it would increase the circulation of the Herald and also its advertising by a certain campaign which the circulation company would put on in the interest of the Herald, and that the money received from such subscriptions and the new advertising obtained for the Herald by the circulation company, would be sufficient to meet the cost of all the premiums and prizes offered by the Herald in the contest as well as by all commissions due the circulation company for new business obtained by it for the Herald. The sum realized from the campaign by the circulation company was not sufficient to pay for the prizes and to pay its commissions, but we held the contract enforceable, and that the circulation company was liable to the Herald Publishing Company for the difference between

the amount realized from subscriptions and advertising, and the sum expended and contracted to be expended by the Herald for prizes and for commissions. Herald Publishing Company v. National Circulation Company, 143 Ky. 830.

An owner of standing timber agreed with a real estate broker that he would take $10,000.00 for his timber, and to give the broker any amount in excess of $10,000.00 for which the latter might sell the timber; the broker found a purchaser ready, able and willing to take the timber at $13,000.00, and this court held the contract enforceable, and the broker entitled to the $3,000.00 as commission. Womack v. Douglas, 157 Ky. 716.

The owner of a farm offered to sell it for $7,975.00 net and agreed with the broker that if he would find a purchaser for the farm he could have all the excess in price over $7,975.00, but if the broker found a purchaser to whom the owner sold the land the broker should have $500.00 as commission. The broker found a purchaser ready, able and willing to take the property and the owner was liable to him for the $500.00 commission. Futrell v. Reeves, 165 Ky. 283.

A contract made between the owner and a broker for the sale of the property by the latter whereby the broker is to have all in excess of a stipulated price for bringing about the sale, the contract is a valid one and enforceable. Blakes Lee v. Ervin, 40 Neb. 130; Geoghegan v. Chatterton, N. Y. App. Div. Reports, 113 N. Y., p. 835; Reams v. Wilson, 147 N. C. 304; Fleming v. Hatton, 92 Kans. 948; Culbertson v. Sheridan, 93 Kans. 268; Fuller v. Reed, 38 Cal. p. 110.

Ordinarily the amount of compensation to which a broker is entitled is ascertained by reference to the contract of employment, which usually either makes provision for a fixed price or sets forth a definite method by which it may be computed, as by declaring it shall consist either of a certain percentage of the price realized (93 Am. Dec. 175, note) or of all that is obtained over and above a fixed sum placed upon the property by the employer. Hayes v. McAra, 166 Mich 198; 35 L. R. A. (N. S.) 116 and note. Moreover, where the broker is to receive all that he can get over a fixed price placed upon the property by his employer, the latter cannot reduce the amount to which the broker thus becomes entitled by selling at a price lower than that acceptable to the

broker's customer.    Ann. Cas. 1913E 785, note; 4 R. C. L. 67.

A gambling contract is one by which two or more parties agree that a certain sum of money, or other thing, shall be paid or delivered to one of them on the happening or not happening of an uncertain event.   A contract upon a contingency by which one may lose but cannot gain, or the other can gain but cannot lose, is a wagering contract.  When a contract is based upon something hazarded on the issue of some uncertain event it is a gamble and unenforceable.  We have held all contracts which merely involved the difference between the quoted prices of stocks or commodities on the day of purchase and that of sale to be wagering contracts and unenforceable if the parties did not intend that the stocks or commodities mentioned in the contract were to be actually delivered.   If an actual delivery is intended the contract is not illegal but may be enforced.

If we separate the contract made between appellees Pumphreys and appellants Dowell and Beard into two parts, as the writing naturally indicates; that is to say, (1) the contract by which the Pumphreys agreed to give to Dowell and Beard, as commission, all the price realized from the sale of 494 acres of land over and above $16,-500.00; and (2) the contract by which Beard and Dowell undertook to guarantee the Pumphreys that 494 acres of their land would, on the following Monday at the sale, bring at least $16,500.00, we have two enforceable contracts within the sight of the law.   It is not infrequent that the owner of land will say to a broker, I will take $10,000.00 for my farm, and you can have all you sell it for above that price as your commission, and these contracts are always enforceable.   4 R. C. L., p. 332; Hayes v. McAra, 35 L. R. A. (N. S.), supra, 9 C. J., p. 581; Culbertson v. Sheridan, supra; Womack v. Douglas, supra; (Ky.) ; Futrell v. Reeves, supra.   The second contract is also enforceable, for one may for a consideration insure or indemnify another against loss on account of any business transaction without contravening any law of the land.   Such contracts are often before the courts and no vice is found in them.   20 Cyc., pp. 1404 to 1419, and notes; 12 R. C. L., pp. 1072-1081.   If the contract when separated into parts, as above suggested, is enforceable, will the joining of the two in a single writing corrupt and vitiate the transaction?   We do not think so, and must therefore hold the contract enforceable.   The demurrer

to the petition should have been overruled for the petition states a good cause of action.

2. The question as to what consideration Beard and Dowell are to receive under the contract is almost as difficult as the one as to whether the contract is legal, as contended by appellant, or void for immorality, as insisted by appellees. The Pumphreys contend that in no event could the brokers receive more than the $1,500.00 realized from a sale of the 300 acres of land over and above the $16,500.00 guaranteed by Beard and Dowell, and that all the excess in land belongs to appellees. On the other hand, Beard and Dowell insist that the contract entitled them to all money and acreage realized from the sale of 494 acres over and above $16,500.00, and they want to read the contract as though it were in the following form:

"In consideration of Beard and Dowell guaranteeing that 494 acres of the said 604 acres of land shall bring $16,500.00 said Josephine Pumphrey and husband agree that any sum realized from the sale above $16,500.00, and any acreage left, if any, after said sum is raised by the sale of a part of the land, shall go to said Beard and Dowell."

For appellees it is said that the court ordered only so much of the land sold as would raise a sum sufficient to satisfy the debt, interest and cost, and that the parties, when they entered into the contract under consideration, had said judgment in mind and entered into the contract intending that only so much of the land should be sold as would be required to raise $14,600.00. This seems hardly reasonable because if only land enough had been sold to raise $14,600.00 and Beard and Dowell were not to receive any part of the remaining land, they would have received no compensation whatever for their services, and would have been obligated for the balance of the $16,500.00 which they guaranteed. The contract seems to contemplate the sale of 494 acres of land; the whole tract advertised to be sold contained about 604 acres. The home farm which appellees desired to retain contained about 110 acres, so that when 110 acres are deducted from 604 acres there are left 494 acres. The Pumphreys by the contract intended to save to themselves the home place of 110 acres, and in order to do so they agree with Beard and Dowell that the latter could sell all of the remaining 494 acres and make it bring at least all of the indebtedness against the entire farm and

about $2,000.00 extra, and in case it was not necessary to sell all the land to raise said $16,500.00, the remainder should constitute a part of the commission of the brokers. The acreage is referred to as 494 acres no less than three times in the last paragraph of the contract, and it is agreed that said 494 acres of land shall bring $16,-500.00; and further that all of the money realized from a sale of the 494 acres above $16,500.00 should be the commission of Beard and Dowell. It is said, however, that Beard and Dowell, by the terms of the contract, were to receive only such *sum* over and above said $16,-500.00, and that the word "*sum*" relates only to money and does not include a payment in land or other property, and this is generally true, but is the real test to be found is in the intention of the contracting parties as gathered from the entire agreement. Did the contracting parties mean that the brokers should have only such sum of money as was realized from a sale of a part of the 494 acres after paying to the Pumphreys $16,500.00, or did they mean by the contract that the brokers should have not only the excess in money over the $16,500.00 realized from the sale but the remainder of the land, not including the 110 acre home place or its reasonable value? We think the latter is the intent and purpose of the parties as clearly expressed in the writing. It follows, therefore, that the court committed reversible error in sustaining the demurrer to the petition. While answers have been filed by the Pumphreys it may be that they will want to amend these pleadings, and the trial courts hould allow this to be done, if the parties so desire.

Judgment reversed for proceedings consistent with this opinion.

Whole court sitting except Judge Moorman.

Judge Settle dissents from so much only of this opinion as holds the brokers entitled to the excess in land or its value as commission.