## "5"-SPOT SHORT RANGE GUN CLUBS OF AMERICA, INC v RINEHART et

Ohio Appeals, 6th Dist, Lucas Co

Decided May, 1937

Flory & Taylor, Toledo, and Fred W. Preece, Toledo, for appellant.

Eldon H. Young, Toledo, for appellees.

## OPINION

By CARPENTER, J.

This cause is in this court on appeal on questions of law and fact. It is a suit to enjoin the defendants, appellees, Wilbur J. Rinehart and others, from carrying on a line of business which plaintiff, appellant, The "5"-Spot Short Range Gun Clubs of America, Inc., alleges amounts to **unfair competition** with its previously established similar business.

The plaintiff is a corporation composed of several individuals, a part of whom claim to have conceived the original idea of a distinctive short range shooting gallery in which the customers play the game of shooting at a specially devised target to try to win a cash prize offered by the house or the management of the gallery. Plaintiff claims this idea was conceived by some of its officers in the winter of 1935-1936 and was set in operation by the establishment of such shooting galleries in the spring and summer of 1936. Several such galleries are operated by plaintiff in Toledo, and several hundred have been licensed by it in various parts of the United States.

The principal features claimed to be distinctive are the short range and the target, which is a white, rectangular card about seven inches high and five inches wide, with a small figure 5 printed in red in each corner. This target is placed on a certain background about eight and one half feet from the player who uses a regular 22-calibre rifle and the game is to obliterate one figure 5 in three shots. As a consideration to try to win the game and with it the cash prize offered, the player pays ten cents for each three shots. The prize is a cash award called a "jack pot" offered by the house. To set this up, the house starts by putting up $5 and when each figure 5 on the card target has been shot at, which for the four 5 spots represents four ten cent fees paid by the players, ten cents is added to the jack pot. This continues until a player in three shots completely obliterates a figure 5 and gets the jack pot, when a new one is started. As each new target is posted, the then amount of the jack pot is written on it, so the player has before him what he will get if he shoots out a figure 5.

In addition to these things, the plaintiff has established a distinctive type of decorations inside all of its galleries with certain standard placards, window signs and advertising, all featuring the term "5 spot." Plaintiff has copyrighted the target, registering the term "5-spot" as a trade mark, both in the office of the Secretary of State of Ohio and in the United States Patent Office, and has secured a patent on the target in the United States Patent Office. The privilege of using these exclusive devices is given to licensees on certain terms.

The claim is that the defendants have stolen plaintiff's ideas and are operating similar shooting galleries in Toledo in which they have simulated all the distinctive features of the plaintiff's galleries and its manner of operating them. They point out especially the short range, the inside draperies and placards, that all window signs are similar, and for a target they use a letter J shaped much like a figure 5, printed in red on the four corners of a diamond shaped white card. They call their places "Jack Pot" galleries.

The plaintiff claims these things mislead the public to think defendants' galleries are those of the plaintiff, and thereby the public is deceived and the plaintiff damaged by such "unfair competition."

The defendants, by answer, set up several defenses, among them, that the ideas were not original with the plaintiff group but were in use long prior to their use or claimed conception by them, and that plaintiff's business "is a money wager based on the outcome of a contest of skill" and is contrary to the gambling statutes, and therefore not entitled to the protection of a court of equity.

The defendants presented some evidence that similar short range shooting galleries

using a figure 5 as a target had been in operation in Alabama in 1934. However, the chief defense is the frank claim that the business of both parties violates the gaming laws and is therefore illegal and that a court of equity should not interfere to protect it.

If plaintiff's business is a violation of any of 'the gambling laws the █ court must deny it the relief sought and the issue as to unfair competition is unimportant.

Defendants, by their amendment in their answer, call attention to §963 of the Ordinances of the city of Toledo, which is as follows:

"Gaming device, gaming. It shall be unlawful for any person, within the limits of this City, to keep or exhibit any gaming table, establishment, device or apparatus to win money or other property of value. or to permit or suffer playing at any game whatever for money or other property of value, on premises occupied by him·or her; and every person so offending, on conviction thereof, shall be fined," etc.

There are several sections in the chapter on "gambling" in the criminal code of Ohio which might be considered in the determination of this issue, but two of them illustrate the phases requiring examination here. They are:

Sec 13056, GC: "Whoever permits a game to be played for gain upon or by means of a device or machine in his house or in an outhouse, booth, arbor or erection of which he has the care or possession, shall be fined," etc.

Sec 13059, GC: "Whoever plays a game for money or other thing of value or makes a wager for money or other thing of value, shal' be fined," etc.

Is target shooting a "game"? The plaintiff says it is. Is the equipment used a "device" upon which the "game" is played? Plaintiff calls it, particularly the target, "game apparatus," which means the same as "device." It has offered in evidence a copy of its application for a patent on its target, the first sentence of which is as follows:

"This invention relates to game apparatus and is more particularly directed to a target to be used in connection with a game requiring the use of firearms." (Emphasis ours).

But it is urged it is a game of skill, not one of chance, and surely there is a large element of skill in the game. There is also some chance. From plaintiff's evidence it appears that one of the prizes won by one player was a jack pot of $166.40. Of this, $5 was the initial contribution made by the house to start that jack pot; $161.40 represents 25 per cent of the money paid in by previous players, all of whom had lost. This represents an investment by them of $645, of which $484.20 was kept by the house. It represents 6456 three-shot tries, by such players. This would seem to indicate there was some chance, as well as skill, in the game.

That gaming may result even where the game depends upon skill, was recognized by this court in Nassr v Upton, █ 4 Oh Ap 202. In Stevens v Cincinnati Times-Star Co., 72 Oh St 112, 73 NE 1058, 106 Am. St. Rep., 586, the court said at page 148:

"This element of chance is not at all incompatible with the presence of an element of calculation, or even certainty."

In Horner v United States, 147 U. S. 449, 459, 37 L. Ed. 237, 13 S. Ct. 409, the court, speaking of a lottery connected with the sale of Austrian bonds, said at page 459:

"The element of certainty goes hand in hand with the element of lot or chance, and the former does not destroy the existence or effect of the latter."

Target shooting, whether it be a game of skill or of chance, is in itself innocuous. Most games are. The element of gambling arises from the bet or wager laid on the results of the game, to use the language of the statute quoted above. the playing of a "game for money." Certainly the players at the 5-Spot galleries play the "game for money." But it is urged this is not a bet or a wager, it is not a game wherein the plaintiff can lose. Looking at each transaction between the players and the house, we find the latter offers a sum of money; to try for it, the player pays ten cents; if he wins he gets the money and the plaintiff loses it, and it must then put up $5 of its money to start a new jack pot. If the player loses, he is out his ten cents, which the plaintiff keeps, and also the jack pot which is offered to the next player as a continuing inducement or lure to him to pay plaintiff another ten cents with its 75 per cent profit to plaintiff. It is obvious

the house does win with every losing shot, its award grows and becomes more attractive and the loss of another $5 starting award is postponed. In this respect, it violates the ordinance quoted and §13059, **GC.**

But if we accept the premise of plaintiff that it can not win or lose, it does not follow that the transaction is not a bet or wager.

In Stevens v Cincinnati Times-Star, supra, we find this definition, page 148 of the opinion:

"A wager is: 'A bet; a contract by which two parties or more agree that a certain sum of money, or other thing, shall be paid or delivered to one of them on the happening, or not happening of an uncertain event'."

In Shumate v Commonwealth, 56 Va. (15 Grat.) 653, 660, and Dowell v Pumphrey, 197 Ky. 59, 246 SW 157, 30 A.L.R. 822, 827, this principle is fully sanctioned and developed.

Looking at the transaction again from plaintiff's viewpoint, if it is not a betting or wagering game between the player and the house, it is one between successive players for the jack pot, each loss means a larger win by some succeeding player, "where it stops nobody knows." This was recognized in Stevens v Cincinnati Times-Star, supra. The court speaking on page 151 of the newspaper in its guessing contract, said:

"It is a matter of indifference to it who wins the prizes, whether this plaintiff or any of the other contributors. Not so with the contributors between themselves. If A should win the first prize, for instance, B, could not. If the transaction were a bet, therefore, it would seem to be between this plaintiff and all the other guessers, and in this view the defendant would be a mere stakeholder. * * * It suffices that, under the laws of Ohio, these guessing contests were, all of them, unlawful."

Applying this principal to the instant case, from plaintiff's viewpoint, the game is condemned both by the ordinance and §13056, **GC.**

In Georgia there is a gambling statute which makes it a crime to carry on a "scheme or device for the hazarding of money or other valuable thing." In the case of Lewis v State, ... Ga. ..., 189 SE 566 (decided January 12, 1937), the accused was indicted for the violation of that statute. The agreed statement of facts showed he was operating a shooting gallery in the same manner as those of the plaintiff, and his conviction was sustained.

The date of the offense charged in the Georgia indictment above was July 23, 1936, which indicates that at that time the claimed original ideas of the plaintiff were in full operation in Hall County, Georgia, and the facts differ enough to indicate that it was not one of plaintiff's 5-spot galleries.

This enterprise being one which violates the criminal law, it is not necessary to consider the claim as to "unfair competition," for this court of equity cannot extend its powers to protect such a business, and the plaintiff's petition is dismissed.

Decree accordingly.

LLOYD and OVERMYER, JJ, concur.